**EXHIBIT A**



ENDORSED
F I L E D
San Francisco County Superior Court

MAY 3 1 2007

GORDON PARK-LI, Clerk
BY: BUSTI BAUTISTA

1  HEINTZ ROBYN & DIGESTI LLP
   CHRISTOPHER R. ROBYN (SBN 243149)
2  1113 Adella Avenue, Suite #100
   Coronado, CA 92118
3  Telephone: (800) 939-8533
   Fax: (800) 939-8533
4
   LAW OFFICES OF LAURENCE PETER DIGESTI
5  Laurence P. Digesti (SBN 74323)
   485 W. Fifth Street
6  Reno, NV 89503
   Telephone: (775) 323-7797
7  Fax: (775) 323-5944

NOV 2  2007 · 9⁴⁴AM

DEPARTMENT 212

8  Attorneys for Plaintiffs JOEL ASSEKO, ALFREDO RITA, and ALEX SHPAK, individually
   and on behalf of all other similarly situated
9

10              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

11           FOR THE COUNTY OF SAN FRANCISCO, UNLIMITED JURISDICTION

12

13  JOEL ASSEKO, ALFREDO RITA, and          Case No.: CGC07- 463846
    ALEX SHPAK, individually and on behalf of
14  all others similarly situated                      CLASS ACTION

15                                            COMPLAINT FOR VIOLATIONS OF:
                  Plaintiff,                  (1) CALIFORNIA LABOR CODE § 200
16                                                et seq.;
         vs.                                  (2) BUSINESS & PROFESSIONS
17                                                CODE § 17200 et seq.;
    GUARDSMARK GP, LLC, GUARDSMARK           (3) BREACH OF CONTRACT;
18  LLC, GUARDSMARK, INC.,                   (4) BREACH OF CONTRACT;
    GUARDSMARK HOLDINGS, INC., and           (5) BREACH OF CONTRACT;
19  DOES 1-25,                               (6) BREACH OF CONTRACT;
                                             (7) BREACH OF IMPLIED
20                                               COVENANT OF GOOD FAITH
                  Defendant                      AND FAIR DEALING; AND
21                                           (8) CONSTRUCTIVE FRAUD

22
                                             DEMAND FOR JURY TRIAL
23

24                           UNLIMITED CIVIL CASE

25  On information and belief, PLAINTIFFS allege as follows:

26  ///

27  ///

28  ///

COMPLAINT - 1

**NATURE OF THE ACTION**

1. This is a class action brought by JOEL ASSEKO, ALFREDO RITA, and ALEX SHPAK (hereinafter "PLAINTIFFS"), individually and on behalf of all persons similarly situated.

2. This is an action against GUARDSMARK GP, LLC, GUARDSMARK LLC, GUARDSMARK, INC., GUARDSMARK HOLDINGS, INC., and DOES 1-25, (collectively "DEFENDANT" or "GUARDSMARK") for violations of Labor Code §§ 200 *et seq.* and Business & Professions Code §§ 17200 *et. seq.* Moreover, as third-party beneficiaries of any and all of DEFENDANT'S contracts with the California Department of General Services ("DGS"), an agency of the State of California, to provide private security services, and any and all of DEFENDANT'S contracts with the Service Employees International Union ("SEIU"), a public employee's union, PLAINTIFFS also allege a breach of said contracts.

3. This action alleges that DEFENDANT failed to provide PLAINTIFFS, who perform work pursuant to a security guard services contract between DEFENDANT and DGS, benefits and/or cash-in-lieu payments at the level required under said contract and Government Code § 19134 ("Section 19134").

4. Additionally, this action alleges that DEFENDANT failed to provide PLAINTIFFS, who perform work pursuant to a security guard services contract between DEFENDANT and DGS, holiday pay as required under said contract.

5. Furthermore, this action alleges that DEFENDANT failed to provide PLAINTIFFS, who perform work pursuant to a security guard services contract between DEFENDANT and SEIU, holiday pay and wage payments for monthly training as required under said contract.

6. As such, this action alleges the following causes of action: (1) DEFENDANT has violated and continues to violate Labor Code § 200 *et seq.*, by failing to pay PLAINTIFFS their full wages, benefits, and/or cash-in-lieu when due; (2) DEFENDANT has engaged and continues to engage in unfair and unlawful business practices in violation of Business & Professions Code § 17200 *et. seq.*; (3) DEFENDANT has breached and continues to breach its

COMPLAINT - 2

contracts with DGS and SEIU; (4) DEFENDANT has breached and continues to breach the implied covenant of good faith and fair dealing; and (5) DEFENDANT has breached and continues to breach the duty owed to PLAINTIFFS resulting in constructive fraud.

7.     With these claims, PLAINTIFFS seek compensation for all unpaid or underpaid benefits and/or cash-in-lieu payments, holiday pay, wage payments for monthly training, plus interest, other damages as permitted by law, restitution of all benefits obtained by DEFENDANT from its unlawful business practices, punitive damages, a permanent injunction, other equitable relief permitted by law, and reasonable attorneys' fees and costs.

## PLAINTIFFS

8.     Plaintiff Joel Asseko is, and at all times pertinent herein was, a resident of California, County of Contra Costa and employed by DEFENDANT as a security guard at the State Building, San Francisco Civic Center Complex, located at 455 Golden Gate Ave., San Francisco, California since October 15, 2002. Plaintiff Asseko brings this action on his own behalf and on behalf of all other persons similarly situated.

9.     Plaintiff Alfredo Rita is and at all times pertinent herein was a resident of California, County of San Mateo and employed by DEFENDANT as a security guard at the State Building, San Francisco Civic Center Complex, located at 455 Golden Gate Ave., San Francisco, California since November 2002. Plaintiff Rita brings this action on his own behalf and on behalf of all other persons similarly situated.

10.     Plaintiff Alex Shpak is and at all times pertinent herein was a resident of California, County of San Francisco and employed by DEFENDANT as a security guard at the State Building, San Francisco Civic Center Complex, located at 455 Golden Gate Ave., San Francisco, California since August 2003. Plaintiff Shpak brings this action on his own behalf and on behalf of all other persons similarly situated.

## DEFENDANTS

11.     PLAINTIFFS are ignorant of the true names and capacities of DEFENDANTS sued in this Complaint as DOES 1 through 25, inclusive, and therefore sue these DEFENDANTS by such fictitious names and capacities. PLAINTIFFS will amend this complaint to allege DEFENDANTS true names and capacities when learned. PLAINTIFFS are

1  informed and believe and thereon allege that each of the fictitiously named defendants is in
2  breach of their contracts with DGS and SEIU or is tortiously or otherwise legally responsible in
3  some manner for the occurrences alleged in the Complaint and for PLAINTIFFS' damages.
4  PLAINTIFFS will amend this Complaint to allege such responsibility when the same shall have
5  been ascertained.

6      12.    PLAINTIFFS are further informed and believe, and on that basis allege, that at
7  all relevant times, each DEFENDANT, including DOES 1 through 25, inclusive, was the agent
8  or employee and/or co-conspirator of one or more of the named DEFENDANTS, and in doing
9  the things alleged, was acting within the scope of that agency or employment. PLAINTIFFS
10  are further informed and believe, and on that basis allege, that some or all of the fictitiously-
11  named DEFENDANTS aided and assisted the named DEFENDANT in committing the
12  wrongful acts alleged in this Complaint, and that PLAINTIFFS' damages were legally caused
13  by each such DEFENDANT.

14                        **JURISDICTION AND VENUE**

15      13.    This Court has jurisdiction over all causes of action herein pursuant to the
16  California Constitution, Article VI, § 10, because this case is a cause not given by statute to
17  other trial courts.

18      14.    This case is properly filed in Superior Court since it is a civil action wherein the
19  relief sought is not of a type that may be granted in a limited civil case.

20      15.    Venue is proper in this Court because the unlawful acts alleged in this Complaint
21  occurred and continue to occur in San Francisco County.

22                        **FACTUAL ALLEGATIONS**

23  **I.   Unpaid and/or Underpaid Benefits as per Section 19134**

24      16.    Section 19134 provides that "[p]ersonal services contracts entered into by a state
25  agency . . . for persons providing . . . security guard services shall include provisions for
26  employee wages and benefits that are valued at least 85 percent of the state employer cost of
27  wages and benefits provided to state employees for performing similar duties." Gov. Code §
28  19134(a).

COMPLAINT - 4

17.     Section 19134 requires the Department of Personnel Administration to establish annually the required wage and benefit costs for covered workers. Gov. Code § 19134(c).

18.     Section 19134 further provides that "[i]n lieu of providing actual benefits, contractors may comply with this section by a cash payment to employees equal to the applicable determination [by the Department of Personnel Administration] under [Section 19134(c)]." Gov. Code § 19134(d).

19.     Moreover, Section 19134 specifies that "[f]ailure to provide benefits or cash-in-lieu to employees as required under this section shall be deemed to be a material breach for any contract for personal services covered by this section." Gov. Code § 19134(e).

20.     Since 2001, DEFENDANT has entered into multiple written agreements ("the Contracts") with DGS to provide security guard services. The three Contracts that govern PLAINTIFFS' employment with DEFENDANT are provided as exhibits herein. The first contract ("Exhibit 1") covers the period from December 1, 2001 to November 30, 2004. (A true and correct copy of the pertinent provisions of this contract is attached hereto as Exhibit 1 and incorporated by this reference). The second contract ("Exhibit 2") covers the period from December 1, 2004 to March 31, 2005. (A true and correct copy of the pertinent provisions of this contract is attached hereto as Exhibit 2 and incorporated by this reference). The third contract ("Exhibit 3") covers the period from April 1, 2005 to March 31, 2008. (A true and correct copy of the pertinent provisions of this contract is attached hereto as Exhibit 3 and incorporated by this reference).

21.     The Contracts require DEFENDANT to provide security guard services at the following two locations: 350 McAllister Street, San Francisco, California and 455 Golden Gate Avenue, San Francisco, California.

22.     The Contracts expressly provide that "[p]ursuant to Government Code section 19134, contracts for security guard services must include provisions for employee benefits that are valued at least 85 percent of the state employer cost of benefits provided to state employees performing similar duties." (*See* Exhibits 1, 2 and 3). Additionally, the Contracts specify the "applicable benefit rates to be paid to Contractor's employees providing services under this contract" and defines "[e]mployees benefits" as "1) health, dental and vision benefits (either

through a purchased plan or self insurance); 2) cash-in-lieu payments; or 3) a combination of actual benefits and cash-in-lieu payments." (*See* Exhibits 1, 2, and 3). The Contracts further provide that "[e]very employee performing covered services under this contract shall receive the applicable rate corresponding to the employee's enrollment status (tier) [*See* Exhibit 1] and the total number of hours such employee works (excluding overtime). There is no minimum number of work hours required in order to qualify for section 19134 benefits." (*See* Exhibits 1, 2, and 3).

23.    The Contracts expressly state that "Contractor acknowledges that failure to comply with the provisions of section 19134 will be deemed a material breach of this contract . . . ." (*See* Exhibit 1, 2, and 3).

24.    DEFENDANT has consistently failed to pay, or disclose the manner of calculation of, PLAINTIFFS' benefits and/or cash-in-lieu under the terms of Section 19134 and DEFENDANT'S Contracts with DGS.

25.    The value of failed payments by DEFENDANT as per DEFENDANT'S Contracts with DGS exceeds $25,000.

26.    DEFENDANT has consistently failed to provide any benefits and/or cash-in-lieu payments at hourly rates that are equal to or greater than the rate required under Section 19134 to employees that perform security guard services pursuant to the Contracts with DGS. DEFENDANT'S practice to this effect is on-going.

## II.    Unpaid and/or Underpaid Holiday Pay as per Contract With DGS

27.    Section 3.14 of the California State Contracting Manual (wherein a true and correct copy of the pertinent provisions of this contracting manual are attached hereto as Exhibit 4 and incorporated by this reference), of which DEFENDANT'S Contracts with DGS are subject to, expressly states that "[security guard] services agreements . . . are required by statue to assure that certain 'employee benefits' and wage levels are provided to the Contractor's employees who perform the services of the agreement (covered employees)." State Contracting Manual Section 3.14(A).

COMPLAINT - 6

28. Additionally, the State Contracting Manual defines the scope of "employee benefits" that must be provided by the Contractor wherein "Holiday Pay" is explicitly enumerated. State Contracting Manual Section 3.14(B).

29. DEFENDANT'S Contracts with DGS explicitly provide a total of thirteen (13) observed State Holidays. (*See* Exhibits 1, 2, and 3).

30. DEFENDANT has failed to pay and/or pay in full all Holiday Pay owed to PLAINTIFFS under the terms of DEFENDANTS contracts with DGS. DEFENDANT'S practice to this effect is on-going.

## III. Unpaid and/or Underpaid Holiday Pay as Per Contract With SEIU

31. DEFENDANT'S contract(s) with SEIU (a true and correct copy of the pertinent provisions of this agreement is attached hereto as Exhibit 5 and incorporated by this reference) expressly states that "all officers who are regularly scheduled to work [on the explicitly provided Holidays], but do not work due to their regular work location being closed, will be paid eight (8) hours regular straight-time pay." Exhibit 5.

32. Additionally, DEFENDANT'S contract(s) with SEIU expressly states that "[w]ork performed on any holiday in paragraph 1 [of Article 14], shall be paid for at one and one-half (1 ½ ) times the basic hourly rate." Exhibit 5.

33. DEFENDANT has failed to pay and/or pay in full all Holiday Pay owed to PLAINTIFFS under the terms of DEFENDANT'S contract(s) with SEIU. DEFENDANT'S practice to this effect is on-going.

## IV. Unpaid Wages for Mandated Training

34. DEFENDANT'S contract(s) with SEIU expressly states that "[e]mployees shall be paid at straight-time rate for all training required by the Employer or mandated by law." Exhibit 5.

35. DEFENDANT, since 1998, has required PLAINTIFFS to complete two (2) hours of training each month.

36. DEFENDANT has failed to pay and/or pay in full completed training owed to PLAINTIFFS under the terms of DEFENDANT'S contract(s) with SEIU. DEFENDANT'S practice to this effect is on-going.

## CLASS ACTION ALLEGATIONS

37.    PLAINTIFFS bring this action on their own behalf and on behalf of all persons similarly situated.    The class that PLAINTIFFS represent is composed of any and all GUARDSMARK security guard employees currently working, or having previously worked within four years prior to the filing of this Complaint, to fulfill DEFENDANT'S contractual duties set out in any and all security guard services contracts between DEFENDANT and DGS and any and all security guard services contracts between DEFENDANT and SEIU.    This putative class will be referred to herein collectively as GUARDSMARK SECURITY GUARDS.

38.    The GUARDSMARK SECURITY GUARDS are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the court.

39.    There is a well-defined community of interest in the questions of law involving and affecting GUARDSMARK SECURITY GUARDS in that DEFENDANT, on a class-wide basis, violated the same sections of the California Labor Code and Business & Professions Code, as well as breaching the same terms of DEFENDANT'S contracts with DGS and SEIU, and engaged in constructive fraud as to all members of the class.

40.    There is a well-defined community of interest in the questions of fact involving and affecting GUARDSMARK SECURITY GUARDS in that:

        a.    DEFENDANT has a uniform policy of promising to provide wages, benefits, and/or cash-in-lieu benefits;

        b.    DEFENDANT has a uniform policy of failing to pay all wages, benefits, and/or cash-in-lieu benefits due to similarly situated security guards;

        c.    DEFENDANT has a uniform policy of failing to pay holiday pay;

        d.    DEFENDANT has a uniform policy of failing to pay all wages for required and/or mandated training.

41.    These questions of law and fact predominate over questions that affect only individual class members.

COMPLAINT - 8

42. PLAINTIFFS' claims alleged herein are typical of those of the class that could be alleged by other similarly situated GUARDSMARK SECURITY GUARDS working for DEFENDANT pursuant to DEFENDANT'S contracts with DGS and SEIU in that DEFENDANT has and continues to engage in a pattern and practice of treating all similarly situated GUARDSMARK SECURITY GUARDS in the same fashion regarding the claims sought herein. Moreover, the relief sought is typical of the relief that would be sought by each of the similarly situated GUARDSMARK SECURITY GUARDS in separate actions.

43. PLAINTIFFS, through their counsel, will fairly and adequately represent and protect the interests of the proposed class of employees.

44. The prosecution of separate actions by individual GUARDSMARK SECURITY GUARDS would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, would establish incompatible standards of conduct for DEFENDANT, and would result in the impairment of rights of employees and the disposition of their interests through actions to which they were not parties.

45. A single class action is superior to numerous individual actions as a means of adjudicating those claims.

## FIRST CAUSE OF ACTION

(By PLAINTIFFS for Failure to pay full wages when due under Cal. Labor Code §§ 200 *et. seq.* against DEFENDANT)

46. PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-45.

47. By failing to compensate employees, as required by Section 19134, as fully set forth above, DEFENDANT has violated and continues to violate Labor Code Section 204, which requires employers, including DEFENDANT, to pay their employees their full wages when due.

48. By failing to compensate employees, as required by Section 19134, DEFENDANT has willfully failed to make timely payment of full wages due to its employees who quit or have been discharged, and thereby has violated Labor Code Sections 201 and 202.

COMPLAINT - 9

49.    As a result of said violations, PLAINTIFFS have been damaged in an amount according to proof but exceeding \$25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## SECOND CAUSE OF ACTION

(By PLAINTIFFS for Unfair/Unlawful Business Practices against DEFENDANT)

50.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-49.

51.    By engaging in the above-alleged business practices in violation of Section 19134 and Labor Code Section 201, 202, and 204, DEFENDANT has engaged and continues to engage in unfair and unlawful business acts and practices in violation of Business & Professions Code Section 17200 *et seq*.

52.    Unless enjoined, DEFENDANT will continue to engage in the unlawful and unfair business practices complained of herein.

53.    As a result of said business practices, PLAINTIFFS have been damaged in an amount according to proof but exceeding \$25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## THIRD CAUSE OF ACTION

(By PLAINTIFFS for Breach of Contract against DEFENDANT)

54.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-53.

55.    PLAINTIFFS are informed and believe that DGS has performed all of its obligations and/or satisfied all conditions under the Contracts between DEFENDANT and DGS. Additionally, PLAINTIFFS are informed and believe that DEFENDANT is not excused from full performance of its duties under the Contracts.

56.    The Contracts between DEFENDANT and DGS are governed by Section 19134. Section 19134(a) provides that employees working under covered contracts shall be provided with "wages and benefits that are valued at least 85 percent of the state employer cost of wages

COMPLAINT - 10

and benefits provided to state employees for performing similar duties." Section 19134(e) further provides that contractors shall be deemed in material breach if they fail "to provide benefits or cash-in-lieu to employees as required under this section." As a condition of this contract, DEFENDANT agreed to comply with Section 19134 and to provide its employees who provide covered services with benefits and/or cash-in-lieu payments] at the rates specified in the contract.

57.    PLAINTIFFS are individuals who perform covered services pursuant to the Contracts between DEFENDANT and DGS.    As such, PLAINTIFFS are third-party beneficiaries of the Contracts between DEFENDANT and DGS.

58.    DEFENDANT has failed and refused, and continues to fail and continues to refuse, to provide PLAINTIFFS, who perform services pursuant to DEFENDANT'S Contracts with DGS, the benefits and/or cash-in-lieu required by (1) Section 19134 and (2) DEFENDANT'S Contracts with DGS.    Consequently, DEFENDANT has breached the Contracts without justification or excuse.  As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000.  Specifically, the difference between the amount paid by DEFENDANT to PLAINTIFFS and the amount owed to PLAINTIFFS as required by (1) Section 19134 and (2) DEFENDANT'S Contracts with DGS is due and payable under the Contracts.

**WHEREFORE,** PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## FOURTH CAUSE OF ACTION

(By PLAINTIFFS for Breach of Contract against DEFENDANT)

59.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-58.

60.    The Contracts between DEFENDANT and DGS are subject to Section 3.14 of the State Contracting Manual which expressly states that "[security guard] services agreements . . . are required by statue to assure that certain 'employee benefits' and wage levels are provided to the Contractor's employees who perform the services of the agreement (covered employees)." Exhibit 4.

COMPLAINT - 11

61.    The State Contracting Manual defines the scope of "employee benefits" that must be provided by the Contractor wherein "Holiday Pay" is explicitly enumerated. Exhibit 4.

62.    DEFENDANT'S Contracts with DGS explicitly provide a total of thirteen (13) observed State Holidays. (*See* Exhibits 1, 2, and 3).

63.    DEFENDANT has failed and refused, and continues to fail and continues to refuse, to pay or pay in full PLAINTIFFS, who perform services pursuant to DEFENDANT'S Contracts with DGS, the Holiday Pay required by (1) DEFENDANT'S Contracts with DGS, and (2) the State Contracting Manual. Consequently, DEFENDANT has breached the Contracts without justification or excuse. As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000. Specifically, the difference between the amount paid by DEFENDANT to PLAINTIFFS and the amount owed to PLAINTIFFS as required by (1) DEFENDANT'S Contracts with DGS, and (2) the State Contracting Manual is due and payable under the Contracts.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## FIFTH CAUSE OF ACTION

(By PLAINTIFFS for Breach of Contract against DEFENDANT)

64.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-63.

65.    PLAINTIFFS are informed and believe that SEIU has performed all of its obligations and/or satisfied all conditions under the contract(s) between DEFENDANT and SEIU. Additionally, PLAINTIFFS are informed and believe that DEFENDANT is not excused from full performance of its duties under the contract(s).

66.    PLAINTIFFS are individuals who perform covered services pursuant to the contract(s) between DEFENDANT and SEIU.    As such, PLAINTIFFS are third-party beneficiaries of the contract(s) between DEFENDANT and SEIU.

67.    The contract(s) between DEFENDANT and SEIU expressly state that "all officers who are regularly scheduled to work [on the explicitly provided Holidays], but do not

COMPLAINT - 12

work due to their regular work location being closed, will be paid eight (8) hours regular straight-time pay." Exhibit 5.

68.    Additionally, DEFENDANT'S contract(s) with SEIU expressly states that "[w]ork performed on any holiday in paragraph 1 [of Article 14], shall be paid for at one and one-half (1 ½ ) times the basic hourly rate." Exhibit 5.

69.    DEFENDANT has failed and refused, and continues to fail and continues to refuse, to pay or pay in full employees, who perform services pursuant to DEFENDANT'S contract(s) with SEIU, the Holiday Pay required by DEFENDANT'S contract(s) with SEIU. Consequently, DEFENDANT has breached the contract(s) without justification or excuse. As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding $25,000. Specifically, the difference between the amount paid by DEFENDANT to PLAINTIFFS and the amount owed to PLAINTIFFS as required by DEFENDANT'S contract(s) with SEIU is due and payable under the contract(s).

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## SIXTH CAUSE OF ACTION

(By PLAINTIFFS for Breach of Contract against DEFENDANT)

70.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-69.

71.    DEFENDANT'S contract(s) with SEIU expressly states that "[e]mployees shall be paid at straight-time rate for all training required by the Employer or mandated by law." Exhibit 5.

72.    DEFENDANT requires PLAINTIFFS to complete two (2) hours of training each month.    PLAINTIFFS are required to fulfill this training by completing written training workbooks called "Green Forms."    Upon completion of the Green Forms, DEFENDANT is obligated, under the terms of its contract(s) with SEIU, to pay PLAINTIFFS for two hours of training, which is to be paid, in addition to, the regular wage and benefit payments on their bi-weekly paychecks, on a once a month basis.

COMPLAINT - 13

73.    DEFENDANT has failed and refused, and continues to fail and continues to refuse, to pay or pay in full employees, who perform services pursuant to DEFENDANT'S contract(s) with SEIU, the two hours per month training wage required by DEFENDANT'S contract(s) with SEIU.  Consequently, DEFENDANT has breached the contract(s) without justification or excuse.  As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding \$25,000.  Specifically, the difference between the amount paid by DEFENDANT to PLAINTIFFS and the amount owed to PLAINTIFFS as required by DEFENDANT'S contract(s) with SEIU is due and payable under the contract(s).

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

## SEVENTH CAUSE OF ACTION

(By PLAINTIFFS for Breach of Implied Covenant of Good Faith and Fair Dealing against DEFENDANT)

74.    PLAINTIFFS incorporate by reference, as though fully set forth, paragraphs 1-73.

75.    As a party to the DGS and SEIU contracts, DEFENDANT had a duty to do everything that the contracts obligated the DEFENDANT to do to accomplish the contracts' purpose, including payment to PLAINTIFFS of benefits and/or cash-in-lieu, holiday pay, and payments for training.

76.    DEFENDANT breached the implied covenant of good faith and fair dealing by failing to cooperate with PLAINTIFFS in the performance of the contracts, including DEFENDANT'S continuing failure to pay PLAINTIFFS the benefits and/or cash-in-lieu, holiday pay, and payments for training.

77.    As a result of said breach, PLAINTIFFS have been damaged in an amount according to proof but exceeding \$25,000.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

///

///

**EIGHTH CAUSE OF ACTION**

(By PLAINTIFFS for Constructive Fraud against DEFENDANT)

78.     PLAINTIFF incorporates by reference, as though fully set forth, paragraphs 1 - 77.

79.     Based upon the particular duties that arise under DEFENDANT'S Contracts with DGS, a special and/or fiduciary relationship exists between PLAINTIFFS and DEFENDANT.

80.     By continually failing to pay and disclose an explanation and manner of calculation of PLAINTIFFS' benefits and/or cash-in-lieu under the terms of Section 19134 and DEFENDANT'S Contracts with DGS, DEFENDANT has breached its special and/or fiduciary relationship with PLAINTIFFS.

81.     DEFENDANT'S failure to pay benefits and/or cash-in-lieu and disclose an explanation and manner of calculation of said benefits resulted in a financial and informational business advantage over PLAINTIFFS.

82.     PLAINTIFFS justifiably relied upon the representation by DEFENDANT that PLAINTIFFS would be paid their full wages, benefits and/or cash-in-lieu consistent with the terms and conditions of the Contracts.

83.     As a result of DEFENDANT'S fraudulent conduct, PLAINTIFFS have been damaged in an amount according to proof but exceeding \$25,000.

84.     Additionally, because of DEFENDANT'S ongoing fraudulent conduct, PLAINTIFFS pray for punitive damages in an amount to be determined by the Court.

**WHEREFORE**, PLAINTIFFS pray for judgment against DEFENDANT, and each of them, as more fully set forth below.

**JURY TRIAL DEMAND**

PLAINTIFFS hereby demand a jury trial on all issues as to which a jury trial is available.

///

///

///

COMPLAINT - 15

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS pray for the following relief:

1. A permanent injunction requiring DEFENDANT to cease and desist from engaging in the unlawful conduct and unfair business practices complained of above;

2. A monetary award for back pay and/or restitution to PLAINTIFFS of the difference between the amount paid to PLAINTIFFS and the amount owed under Section 19134 and/or DEFENDANT'S Contracts with DGS, in an amount to be established by proof at trial but believed to exceed of \$25,000;

3. A monetary award for back pay and/or restitution to PLAINTIFFS of the difference between the amount paid to PLAINTIFFS and the amount owed under DEFENDANT'S contracts with SEIU, in an amount to be established by proof at trial but believed to exceed of \$25,000;

4. Waiting time penalties on monies due upon termination to employees who quit or have been discharged, as provided for by Labor Code Section 203, Section 218, and Section 2699;

5. Penalties for failure to pay employees their full wages when due, as provided for by Labor Code Section 210, Section 218, and Section 2699;

6. Punitive damages as may be determined by this Court;

7. All other appropriate equitable relief authorized by Business & Professions Code Section 17203;

8. Prejudgment interest on all sums awarded at the rate of ten percent (10%) per annum from the date each wage payment was due to the date of judgment herein, pursuant to Labor Code Section 218.6 and Civil Code Section 3289;

///

///

///

///

COMPLAINT - 16

9.    Attorney's fees, statutory costs and litigation expenses in an amount the Court determines to be reasonable, pursuant to Labor Code Section 218.5, Section 2699 and/or Code of Civil Procedure Section 1021.5;

10.    Such other and further relief as is equitable, just, and proper.

DATED: May 22st, 2007

HEINTZ ROBYN & DIGESTI LLP

BY: _____
        CHRISTOPHER R. ROBYN
        Attorneys for Plaintiff

COMPLAINT - 17

# EXHIBIT 1

ATE OF CALIFORNIA
ANDARD AGREEMENT AMEND        T
) 213 (Rev 09/01)

| AGREEMENT NUMBER |
|---|
| **3043365, Am. 1** |

This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME

**Department of General Services, Real Estate Services Division, Building & Property Mgmt. Branch**

CONTRACTOR'S NAME

**GUARDSMARK, GP**

| | |
|---|---|
| The term of this Agreement is: | December 1, 2001 to November 30, 2004 |
| This Amendment adds the following amount to the Agreement | $810,960 |
| The maximum amount of this Agreement after this amendment is: | $3,730,960 |

The parties mutually agree to this amendment as follows. All actions noted below are by this reference made a part of the Agreement and incorporated herein:

## SECURITY GUARD SERVICES
## SAN FRANCISCO CIVIC CENTER – 455 GOLDEN GATE AVENUE, SAN FRANCISCO, CA

ontract Number 3043365 is hereby Amended as follows:

ie hourly rate table shown in Exhibit A, SCOPE OF WORK, item 2, INVOICING, is hereby amended as follows:

| Classification | Hourly rate | | Classification | Hourly Rate |
|---|---|---|---|---|
| Security Officer I | $18.42 | | Supervisor II | $23.48 |
| Security Officer II | $20.28 | | Senior Supervisor I | $28.68 |
| Supervisor I | $21.88 | | Senior Supervisor II | $29.98 |

The State maintains the right to substitute the Supervisor for the Security Officer.

is amendment adds an additional $810,960 for the remainder of the term to fund the mandated benefit yments, public demonstrations, gate breaking and scheduled functions in and around the facility.

cept as amended herein, all other terms and conditions of the original agreement shall remain in full ce and effect.

I WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | CALIFORNIA Department of General Services Use Only |
|---|---|
| NTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.) | |
| uardsmark, GP | |
| (Authorized Signature) | APPROVED |
| DATE SIGNED 7/14/83 | For Execution By |
| NTED NAME AND TITLE OF PERSON SIGNING | By |
| ARETH C. LEVITON, VICE PRESIDENT | By |
| DRESS | **APPROVED** |
| 44 Montgomery Street, Suite 700, San Francisco, CA  94104-3314 | **JUL 3 1 2003** |
| STATE OF CALIFORNIA | |
| ENCY NAME | DEPT OF GENERAL SERVICES |
| partment of General Services, Real Estate Services Division | |
| ilding & Property Management Branch | |
| (Authorized Signature) | DATE SIGNED 7/?/83 |
| NTED NAME AND TITLE OF PERSON SIGNING | |
| chelle Ogata, Assistant Chief | |
| DRESS | |
| 7 3rd Street, Suite 5-105, West Sacramento, CA  95605 | Exempt per _____ |

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213 (Rev 06/01)

| | AGREEMENT NUMBER |
|---|---|
| | 3043365 |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME

**Department of General Services, Real Estate Services Division, Building & Property Mgmt. Branch**

CONTRACTOR'S NAME

**GUARDSMARK, INC.**

| 2. | The term of this Agreement is: | **December 1, 2001 to November 30, 2004** |
|---|---|---|
| 3. | The maximum amount of this Agreement is: | **$3,120,000.00**   (for regularly scheduled service) |

4. The parties agree to comply with the terms and conditions of the following exhibits which are by this reference made a part of the Agreement.

**SECURITY GUARD SERVICES**
**SAN FRANCISCO CIVIC CENTER**
**455 GOLDEN GATE AVENUE, SAN FRANCISCO, CA**

| | |
|---|---|
| Exhibit - A – Scope of Work | 8 pages |
| Exhibit - B – Budget Detail and Payment Provisions | 1 page |
| Exhibit - C* – General Terms and Conditions – Go to www.dgs.ca.gov/contracts. | GTC 201 |
| Exhibit - D – Supplemental Conditions | 1 page |

Items shown with an Asterisk (*), are hereby Incorporated by reference and made part of this agreement as if attached hereto.

**IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.**

| CONTRACTOR | CALIFORNIA Department of General Services *Use Only* |
|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.)<br>Guardsmark, Inc. | |
| BY (Authorized Signature)           DATE SIGNED)  4/15/02    APPROVED For Execution<br>PRINTED NAME AND TITLE OF PERSON SIGNING         By _____<br>IRA A. LIPMAN, PRESIDENT                         By _____ | APPROVED<br>APR 25 2002<br>DEPT OF GENERAL SERVICES |
| ADDRESS<br>44 Montgomery Street, Suite 700<br>San Francisco, CA  94104-3314 | |
| STATE OF CALIFORNIA | |
| AGENCY NAME<br>Department of General Services, Real Estate Services Division | |
| BY (Authorized Signature)           DATE SIGNED  4-23-02<br>PRINTED NAME AND TITLE OF PERSON SIGNING<br>Timothy Bow, Chief | |
| ADDRESS<br>707 3rd Street, Suite 8-105, West Sacramento, CA  95605 | ☐ Exempt per |

## EXHIBIT A

## SCOPE OF WORK

### SECURITY GUARD SERVICES
### SAN FRANCISCO CIVIC CENTER
### 455 GOLDEN GATE AVENUE, SAN FRANCISCO, CA

## CONTRACTOR AGREES TO PROVIDE:

Contractor will furnish all uniformed labor and incidental clerical supplies necessary to provide unarmed security guard services in accordance with the terms and conditions set forth in this agreement.

1.  **PROJECT MONITOR:** Mr. Nick Cimino, Regional Building Manager, is assigned as the State Project Monitor for the contract. Mr. Cimino is not authorized by the State to make any commitments or make any changes which will affect the price, terms, or conditions of the contract. The State reserves the right to designate a replacement for the State Project Monitor. The Contractor will be provided with written notice of any such change.   Mr. Cimino's phone number is (415) 703-4952.

2.  **INVOICING:** Contractor has indicated the following hourly rates will be invoiced to the State for regularly scheduled service:

    | Classification | Hourly Rate |
    | --- | --- |
    | Security Officer | $16.03 |
    | Supervisor | $16.42 |
    | Senior Supervisor | $23.35 |

    Payments shall be made to the Contractor, monthly, in arrears, upon receipt of itemized weekly invoices in triplicate. Written/approved overtime and holiday rates will be invoiced and paid by the State at a factor of 1.5 times the unit hourly rate. Holidays include New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Date and Christmas Day. The rates for services rendered pursuant to this Agreement may be changed during the term of this contract upon mutual agreement of both parties.

    Invoices shall include the contract number, dates of service and number of hours billed. Invoices to be made out to:

    Department of General Services, Building & Property Management Branch

    Invoices to be submitted to:

    Cynthia Harris, Office Technician
    Building and Property Management Branch
    505 Van Ness Avenue, Suite 2012
    San Francisco, CA  94102

3.  **Holidays:** Unless expressly required, no work will be performed on State holidays. The Building Manager's Office will provide Contractor with a list of the current State holidays for each year.

4.  **GUARDS REQUIREMENTS:** Guards must have adequate experience for their assignments under this agreement. Guards must have at the time of assignment, guard registration cards issued by the California Department of Consumer Affairs. All guards assigned to work under this agreement must have been found to be in good physical condition for the work they are to perform. Guards must be fully capable of performing work requiring moderate to arduous physical exertion under either normal or emergency conditions.  Guards must be mentally alert and capable of exercising good judgement, implementing instructions, and assimilating necessary specialized training.

Prior to their initial assignment, guards are required to have received, in addition to any Department of Consumer Affairs required training:

•   Training in security and emergency procedures, crowd control, and public relations.

5. **POST INSTRUCTIONS:**  The security guards will, at all times, be familiar with, but not limited to, the following specific post instructions:

- Emergency telephone numbers
- Emergency fire and fire alarm procedures
- Emergency Intrusions alarm procedures
- Floor plans (location of alarms and alarmed doors)
- Medical emergencies
- Elevator emergencies/malfunctions
- Bomb threats
- Earthquakes
- Access Control
- Deliveries
- Equipment removal policy and procedures
- Building patrol procedures
- Life/safety systems.

6.  **UNIFORMS:** All security guards will be uniformed in blue blazer, gray pants, tie, black shoes, and white shirt. All uniform and auxiliary equipment must be approved by the State. Any changes in the uniform style or color shall be approved by the State and provided by Contractor at no additional cost to the State.

7.  **REQUIRED AND PROHIBITED ACTIVITIES:**
The contractor shall ensure that all assigned guards meet the following standards of conduct and appearance:
A.   Maintain clean and neat appearance and a courteous attitude.
B.   Guards shall keep their uniforms in good conditions, cleaned and pressed, and shall wear a complete uniform while on duty.
C.   The guards shall keep all uniforms clean and in good condition.
D.   The security guard shall maintain high visibility, answer routine questions for directions and handle minor problems.

While on duty on the State facility, guards shall not:

A. Listen to radios or any other audio medium which is not job related.
B. Watch television
C. Read any materials which are not job related.
D. Use State telephones for other than State business
E. Leave their area of responsibility
F. Entertain personal visitors
G. Be under the influence of illegal drugs or alcohol
H. Be under the influence of prescribed medications which may affect job performance
I. Display a discourteous, abrasive, or belligerent attitude
J. Sleep

8. **REPORTING:**
Security guards shall complete all required security reports which are required by the State. Written reports are required weekly, plus a monthly report of activities. These reports are to be submitted to the Building Manager. Reports shall include, but not be limited to:

A. Identify any exterior doors not properly secured. If the situation is of a suspicious nature, the appropriate law enforcement agency should be notified.
B. Identify any exterior doors with defective hardware which might affect building security.
C. Report any incidents affecting the safety or security of the building or occupants.
D. Report any defective exterior lights.
E. Note any areas where staff is working after hours.
F. Report unusual circumstances, suspicious persons and any other problems encountered to this appropriate law enforcement agency.
G. Assault, burglary, robbery, vandalism or any suspicious activities shall be reported to the appropriate law enforcement agency. If an emergency dial 911.
H. A seriously injured or ill person, i.e. hear attack, stroke, or seizure, should be reported by calling 911.
I. Fire or smoke: Call 911 and alert building occupants.
J. Electrical outages, broken pipes, smashed windows, etc., notify those persons designated by the State and request that Building & Property Management be notified in order to effect immediate repairs.
K. The contractor will complete all reports dealing with security, law violation, injury and appropriate incident reports as required.

The Building Manager shall be immediately notified at (415) 703-4952 by the Area Supervisor of any of the following occurrences:

A. Any major security/safety conditions occurring in the facility, i.e. fire, felony crimes.
B. Any employee of the Contractor (assigned to this facility) who is arrested or otherwise becomes the focus of a criminal investigation.
C. Any complaints made about an employee of the Contractor assigned to court security by the court clerk or any justice of the court.
D. Any criminal, observed safety, or observed health hazard occurs at the facility which could effect the court operation.

JAN-25-07 16:19 From:C H S B    5106223265    T-442 P.44/49 Job-620

360 McAllister - 2 Units
455 Golden Gate - 3 Units

POST ORDERS

| LOCATION | RECOMMENDED COVERAGE | HOURS PER DAY | DAYS PER WEEK | TOTAL HOURS PER WEEK |
|---|---|---|---|---|
| 350 McAllister Entrance (2 x ray Magnetometer Units) | M-F  7:00 am – 3:00 pm 5 S/O's<br>10:00 am – 6:00 pm 1 S/O<br>3:00 pm – 6:00 pm 1 S/O | 51 | 5 | 255 |
| Loading Dock Station | 1 Security Officer<br>M-F 7:00 am – 5:00 pm | 10 | 5 | 50 |
| Main Building Command Center | 24 Hours per Day / 7 days per week<br>Supervisor – 40 hours per week<br>Security Officer – 128 Hours per week | 24 | 7 | 168 |
| Rover, After Hours | 1 Security Officer<br>M-F 6:00 pm – 7:00 am<br>S-S 24 hours per day | 13<br>24 | 5<br>2 | 65<br>48<br>113 |
| 455 Golden Gate Entrance (2 x-ray Magnetometer Units) | M-F  7:00 am – 3:00 pm 7 S/O's<br>10:00 am – 6:00 pm 2 S/O's<br>7:00 am – 6:00 pm 1 S/O at Kiosk<br>After Hours:  1 Security Officer<br>M-F  6:00 pm – 11:00 pm | 83 | 5 | 415 |
| 40 Hours per Week Coverage Contingency | | 5 | 5 | 25 |
| TOTAL | | | | 1,066 |

## CONTRACT'S REPRESENTATIVES DURING THE TERM OF THIS AGREEMENT WILL BE:

| State of California: | Contractor: |
|---|---|
| Dept. General Services<br>Real Estate Services Division<br>Building & Property Management Branch<br>455 Golden Gate Avenue, Suite 2012<br>San Francisco, CA  94102<br>Attn: Nick Cimino, Regional Building Manager<br>Phone:  (415)  703-4104 | Guardsmark, Inc.<br>44 Montgomery Street, Suite 700<br>San Francisco, CA  94104<br>Attn:  Coley Buellesfeld, Regional Manager<br>Phone:  (415)  956-6070<br>Fax:    (415)  956-8317 |

## Mandated Wage Rates

Per Government Code Section 19130, the Contractor agrees, by signing this contract, to not undercut the State's wages by more than 15% at any time during the period of the contract. The dollar amount shown is 14.85% less than what each State classification is paid. The wages are calculated against the State Personnel Board wages as shown on their web page as of December 1, 2001, and are subject to increase or decrease in accordance with the State budgeting process. Any changes in this information will be provided to Contractor for its purposes. The Contractor is not to pay their similar classifications less than:

| Security Guard = $9.48 |
|---|
| Lead Security Guard = $9.83 |

## Employee Benefit Package

Pursuant to Government Code section 19134, contracts security guard services must include provisions for employee benefits that are valued at least 85 percent of the state employer cost of benefits provided to state employees performing similar duties.

"Employee benefits" means either 1) health, dental and vision benefits (either through a purchased plan or self insurance); 2) cash-in-lieu payments; or 3) a combination of actual benefits and cash-in-lieu payments.

The applicable benefit rates to be paid to Contractor's employees providing covered services under this contract are as follows:

**December 1, 2001 to January 31, 2002**

| Single party | $1.05 |
|---|---|
| Single party plus one dependent | $2.01 |
| Single party plus two or more dependents | $2.86 |

**Begins February 1, 2002 and may be subject to change during the term of this Agreement**

| Single party | $ 1.12 per hour |
|---|---|
| Single party plus one dependent | $ 2.17 per hour |
| Single party plus two or more dependents | $ 2.86 per hour |

Every employee performing covered services under this contract shall receive the applicable rate corresponding to the employee's enrollment status (tier) and the total number of hours such employee works (excluding overtime). There is no minimum number of work hours required in order to qualify for section 19134 benefits. Only employees performing "covered services" shall receive such benefits; administrative, solely supervisory, or other support personnel are not covered.

The total amount of section 19134 benefits to be paid under this contract shall not exceed $ 35,000.00.

Should the Department of Personnel Administration (DPA) post a rate change during the life of this contract, this contract shall be amended to reflect the new benefit rates to be paid to Contractor's covered employees. The amendment shall be retroactive to the date the rate change is posted by DPA.

In order to be paid on the contract, Contractor must provide monthly written reports to the State identifying for each preceding month: the names of each employee who received Section 19134 benefits/cash-in-lieu, the number of hours worked by each employee, the hourly benefit rate used for each employee, the total amount of benefits/cash-in-lieu paid to each employee, and the grand total of benefits/cash-in-lieu paid to all employees. Changes to employee enrollment status (tiers) from prior months should be noted. A sample report form will be issued to Contractor upon execution of the contract.

Contractor acknowledges that failure to comply with the provisions of section 19134 will be deemed a material breach of this contract which could subject the contract to immediate termination at the State's sole option. This contract and all documents relating to implementation of section 19134 are subject to audit by the Department of General Services, the Bureau of State audits, and/or the State or its designee.

## EXHIBIT B

## BUDGET DETAIL AND PAYMENT PROVISIONS

### 1. Invoicing and Payment

A.  For services satisfactorily rendered, and upon receipt and approval of the invoices, the State agrees to compensate the Contractor for actual expenditures incurred in accordance with the rates specified herein, which is attached hereto and made a part of this Agreement.

B.  Payment shall be made monthly in arrears upon satisfactorily performance of work and upon receipt of an invoice received and approved by the designated representative(s). The invoice must be submitted on contractor's letterhead signed by authorized representative, and include:

- Agreement number
- Time period covered
- Work completed for the period shall be identified (detailed statement of services)

Submit invoices to:

Department of General Services
Real Estate Services Division
Building & Property Management Branch
Attention: Cynthia Harris
455 Golden Gate Avenue, Suite 1202
San Francisco, CA  94102

### 2. Budget Contingency Clause

A.  It is mutually agreed that if the Budget Act of the current year and/or any subsequent years covered under this Agreement does not appropriate sufficient funds for the program, this Agreement shall be of no further force and effect. In this event, the State shall have no liability to pay any funds whatsoever to Contractor or to furnish any other considerations under this Agreement and Contractor shall not be obligated to perform any provisions of this Agreement.

B.  If funding for any fiscal year is reduced or deleted by the Budget Act for purposes of this program, the State shall have the option to either cancel this Agreement with no liability occurring to the State, or offer an agreement amendment to Contractor to reflect the reduced amount.

### 3. Prompt Payment Clause

Payment will be made in accordance with, and within the time specified in, Government Code Chapter 4.5, commencing with Section 927.

# EXHIBIT C

## GENERAL TERMS AND CONDITIONS

PLEASE NOTE: This page will not be included with the final agreement.  The General Terms
and Conditions will be included in the agreement by reference to Internet site:
www.dgs.ca.gov/contracts.

# EXHIBIT D

## SUPPLEMENTAL CONDITIONS

Requirements included herein supplement Document GTC 201, Exhibit C, GENERAL TERMS AND CONDITIONS:

Revise item 7. Termination for Cause, as follows:

7.  TERMINATION FOR CAUSE: ~~The State~~ *Either party* may terminate this agreement *upon written notice to the other party* and be relieved of any *further obligations*~~payments~~ should the Contractor *other party* fail to perform the requirements of this Agreement at the time and in the manner herein provided.  In the event of such termination the State may proceed with the work in any manner deemed proper by the State.  ~~All costs to the State shall be deducted from any sum due the contractor under this Agreement and the balance, if any shall be paid to the Contractor upon demand.~~  *Either party may terminate this Agreement and be relieved of any further obligations by giving at least 30 days prior written notice to the other party.*

# EXHIBIT 2

STATE OF CALIFORNIA
**STANDARD AGREEMENT**
STD 213 (Rev 09/01)

| AGREEMENT NUMBER |
|---|
| 3079525 |
| REGISTRATION NUMBER |
| 1760120458790 |

1. This Agreement is entered into between the State Agency and the Contractor named below:

STATE AGENCY'S NAME

**Department of General Services -- Real Estate Services Division
Building & Property Management Branch**

CONTRACTOR'S NAME

**Guardsmark, GP**

2. The term of this Agreement is: **December 1, 2004 through March 31, 2005**

3. The maximum amount of this Agreement is: **$509,254.00**
**Five hundred nine thousand, two hundred fifty-four dollars.**

4. The parties agree to comply with the terms and conditions of the following exhibits, which are by this reference, made a part of the Agreement.

### EMERGENCY SECURITY GUARD SERVICES
### CIVIC CENTER COMPLEX (402)
### 455 GOLDEN GATE AVENUE
### SAN FRANCISCO, CA 94102

| | | |
|---|---|---|
| Exhibit - A – Scope of Work, Post Orders and Mandated Wage Rates | | Pages 2 - 7 |
| Exhibit - B – Budget Detail, Payment Provisions Certifications & Cost Sheet | | Pages 8 - 14 |
| Exhibit - C* – General Terms and Conditions | | GTC 304 |
| Exhibit - D – Additional Provisions | | Page 16 |

The item shown with an Asterisk (*), is hereby incorporated by reference and made part of this Agreement as if attached hereto. This document can be viewed at www.dgs.ca.gov/contracts

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto.

| CONTRACTOR | CALIFORNIA Department of General Services Use Only |
|---|---|
| CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.) **Guardsmark, GP** | |
| BY (Authorized Signature) *[signature]* | *[signature]* |
| PRINTED NAME AND TITLE OF PERSON SIGNING **Gareth C. Leviton, Vice President** | |
| ADDRESS **4 Montgomery Street, Suite 700 San Francisco, CA 94104-3314** | APPROVED By _____  By _____ |
| | **APPROVED** **[stamp] 1 6 2005** DEPT OF GENERAL SERVICES |
| DATE SIGNED **1-31-05** | |

| STATE OF CALIFORNIA | |
|---|---|
| AGENCY NAME **Department of General Services, Real Estate Services Division Building & Property Management Branch** | |
| BY (Authorized Signature) *[signature]* | *[signature]* |
| PRINTED NAME AND TITLE OF PERSON SIGNING **Dave Sharkey, Assistant Chief** | |
| ADDRESS **707 3rd Street, Suite 5-105, West Sacramento, CA 95605** | ☐ EXEMPT |
| DATE SIGNED **2/11/05** | |

## EXHIBIT A
## SCOPE OF WORK

### EMERGENCY SECURITY GUARD SERVICES
### CIVIC CENTER COMPLEX (402)
### 455 GOLDEN GATE AVENUE
### SAN FRANCISCO, CA 94102

### I.  SERVICES SHALL BE PERFORMED AT:
455 Golden Gate Avenue, San Francisco, CA  94102

### II.  SERVICES SHALL BE PROVIDED:
A. See Post Orders (page 5)

B. Holidays:  Unless expressly required, no work will be performed on State holidays.  The Building Manager's Office will provide Contractor with a list of the current State holidays for each year.  Currently, State Holidays are as follows:

| | |
|---|---|
| New Year's Day | Independence Day |
| Martin Luther King, Jr. Day | Labor Day |
| Lincoln's Birthday | Columbus Day |
| Presidents Day/Washington's Birthday | Veterans Day |
| Cesar Chavez Day | Thanksgiving (Thursday and Friday) |
| Memorial Day | Christmas Day |

### III.  PARKING:
Parking is available at an adjacent or nearby public parking facility.

### IV.  TERM:
The Contract term will be for four (4) months, December 1, 2004 through March 31, 2005.

### V.  REQUIREMENTS:
All personnel employed by the Contractor for this work shall be qualified and possess the necessary skills and abilities to carry out the work.  The Contractor is required to maintain a current Private Patrol Operator's License for the duration of this Contract.

### VI.  DETAILED DESCRIPTIONS OF SERVICES TO BE PROVIDED:
Contractor shall provide all uniformed security guard labor and incidental clerical supplies necessary for the performance of these services in accordance with the terms and conditions as described below.

### A.  GUARD REQUIREMENTS

1. Guards must have adequate experience for their assignments under this agreement.  At the time of assignment, Guards must have individual guard registration cards issued by the California Department of Consumer Affairs.  All Guards assigned to work under this Agreement must be in good physical condition for the work they are to perform.  Guards must be fully capable of performing work requiring moderate to arduous physical exertion under either normal or emergency conditions.  Guards must be mentally alert and capable of exercising good judgement, implementing instructions, and assimilating necessary specialized training.

2. Prior to their initial assignment, Guards are required to have received training in security and emergency procedures, crowd control, and public relations, in addition to any Department of Consumer Affairs required training:

### B. POST INSTRUCTIONS

The Guards will, at all times, be familiar with, but not limited to, the following specific post instructions:

1. Emergency telephone numbers
2. Emergency fire and fire alarm procedures
3. Emergency intrusions alarm procedures
4. Floor plans (location of alarms and alarmed doors)
5. Medical emergencies
6. Elevator emergencies/malfunctions
7. Bomb threats
8. Earthquakes
9. Access Control
10. Deliveries
11. Equipment removal policy and procedures
12. Building patrol procedures
13. Life/safety systems.

### C. UNIFORMS

All security guards will be uniformed in blue blazer, gray pants, tie, black shoes, and white shirt. All uniform and auxiliary equipment must be approved by the State. Any changes in the uniform style or color shall be approved by the State and provided by Contractor at no additional cost to the State.

### D. REQUIRED ACTIVITIES

Contractor shall ensure that all assigned Guards meet the following standards of conduct and appearance:

1. Maintain clean and neat appearance and a courteous attitude.
2. Guards shall keep their uniforms in good conditions, cleaned and pressed, and shall wear a complete uniform while on duty.
3. The Guards shall keep all uniforms clean and in good condition.
4. The Guards shall maintain high visibility, answer routine questions for directions and handle minor problems.

### E. PROHIBITED ACTIVITIES

While on duty on the State facility, Guards shall not:

1. Listen to radios or any other audio medium which is not job related.
2. Watch television
3. Read any materials which are not job related.
4. Use State telephones for other than State business.
5. Leave their area of responsibility.
6. Entertain personal visitors.
7. Be under the influence of illegal drugs or alcohol.
8. Be under the influence of prescribed medications which may affect job performance.
9. Display a discourteous, abrasive, or belligerent attitude.
10. Sleep.

### F. REPORTS

Guards shall complete all required security reports which are required by the State. Written reports are required weekly, plus a monthly report of activities. These reports are to be submitted to the Building Manager. Reports shall include, but are not limited to:

1. Identify any exterior doors not properly secured. If the situation is of a suspicious nature, the appropriate law enforcement agency should be notified.
2. Identify any exterior doors with defective hardware which might affect Building security.
3. Report any incidents affecting the safety or security of the building or occupants.
4. Report any defective exterior lights.

5. Note any areas whe... staff is working after hours.
6. Report unusual circumstances, suspicious persons and any other problems encountered to this appropriate law enforcement agency.
7. Assault, burglary, robbery, vandalism or any suspicious activities shall be reported to the appropriate law enforcement agency. If an emergency, dial 911.
8. A seriously injured or ill person, i.e. heart attack, stroke, or seizure, should be reported by calling 911.
9. Fire or smoke: Call 911 and alert Building occupants.
10. Electrical outages, broken pipes, smashed windows, etc., notify those persons designated by the State, and request that Building & Property Management be notified in order to affect immediate repairs.
11. Contractor will complete all reports dealing with security, law violation, injury and appropriate incident reports, as required.

**The Area Supervisor shall notify the Building Manager immediately, at (415) 703-4100, of any of the following occurrences:**

1. Any major security/safety conditions occurring in the Facility, i.e. fire, felony crimes.
2. Any employee of the Contractor (assigned to this Facility) who is either arrested or otherwise becomes the focus of a criminal investigation.
3. Any complaints made about an employee of the Contractor assigned to Court Security by the Court Clerk, or by any Justice of the Court.
4. Any criminal activity, observed safety, or observed health hazard occurs at the Facility, which could effect the Court operations.

# POST ORDERS

350 McAllister - 2 Units
455 Golden Gate – 3 Units

| LOCATION | RECOMMENDED COVERAGE | HOURS PER DAY | DAYS PER WEEK | TOTAL HOURS PER WEEK |
|---|---|---|---|---|
| 350 McAllister Entrance (2 x-ray Magnetometer Units) | M-F  7:00 am – 8:00 pm 5 S/O's<br>      10:00 am – 6:00 pm 1 S/O<br>      3:00 pm – 6:00 pm 1 S/O | 51 | 5 | 255 |
| Loading Dock Station | 1 Security Officer<br>M-F  7:00 am – 5:00 pm | 10 | 5 | 50 |
| Main Building Command Center | 24 Hours per Day / 7 days per week:<br>Supervisor – 40 hours per week<br>Security Officer – 128 Hours per week | 24 | 7 | 168 |
| Rover, After Hours | 1 Security Officer<br>M-F  6:00 pm – 7:00 am<br>S-S  24 hours per day | 13<br>24 | 5<br>2 | 65<br>48<br>113 |
| 455 Golden Gate Entrance (2 x-ray Magnetometer Units) | M-F  7:00 am – 3:00 pm  7 S/O's<br>      10:00 am – 6:00 pm  2 S/O's<br>      7:00 am – 6:00 pm  1 S/O at Kiosk<br>After Hours: 1 Security Officer<br>M-F  6:00 pm – 11:00 pm | 83 | 5 | 415 |
|  |  | 5 | 5 | 25 |
| 40 Hours per Week Coverage Contingency |  |  |  | 40 |
|  |  |  | TOTAL | 1,066 |

5

## Mandated Wage Rates

Per Government Code Section 19130, the Contractor agrees, by signing this contract, to not undercut the State's wages by more than 15% at any time during the period of the contract. The dollar amount shown is 14.85% less than what each State classification is paid. The wages are calculated against the State Personnel Board wages as shown on their web page as of February 1, 2004, and are subject to increase or decrease in accordance with the State budgeting process. Any changes in this information will be provided to Contractor for its purposes. The Contractor shall not pay its similar classifications less than:

| Classification | Basic Hourly Rate | Blended Benefit Rate | Total to Be Paid to Employee: |
|---|---|---|---|
| Security | $9.49 | $5.53 | $15.02 |
| Lead Security | $9.83 | $5.63 | $15.46 |

## Employee Benefit Package

Pursuant to Government Code section 19134, contracts for Security Services must include provisions for employee benefits that are valued at least 85 percent of the State employer cost of benefits provided to State employees performing similar duties.

"Employee benefits" means either 1) health, dental and vision benefits (either through a purchased plan or self insurance); 2) cash-in-lieu payments; or 3) a combination of actual benefits and cash-in-lieu payments.

The applicable benefit rate to be paid to Contractor's employees providing covered services under this contract is listed in the above table under "Blended Benefit Rates". Every employee performing covered services under this contract shall receive the applicable rate corresponding to the total number of hours such employee works (excluding overtime). There is no minimum number of work hours required in order to qualify for section 19134 benefits. Only employees performing "covered services" shall receive such benefits; administrative, solely supervisory, or other support personnel are not covered.

The total amount of section 19134 benefits to be paid under this contract shall not exceed $ *100,000*. **(This amount is to be filled in separately, by Contractor, and is included in the rates provide by the Contractor.)**

Should the Department of Personnel Administration (DPA) post a rate change during the term of this contract, this contract shall be amended to reflect the new benefit rate to be paid to Contractor's covered employees. The amendment shall be retroactive to the date the rate change is posted by DPA.

In order to be paid for the Contract, Contractor must provide monthly written reports to the Building Manager overseeing this Contract, identifying for each preceding month: the names of each employee who received Section 19134 benefits/cash-in-lieu, the number of hours worked by each employee, the hourly benefit rate used for each employee, the total amount of benefits/cash-in-lieu paid to each employee, and the grand total of benefits/cash-in-lieu paid to all employees.

Contractor acknowledges that failure to comply with the provisions of section 19134 will be deemed a material breach of this contract which could subject the contract to immediate termination at the State's sole option. This Contract and all documents relating to implementation of section 19134 are subject to audit by the Department of General Services, the Bureau of State audits, and/or the State or its designee.

## IX.  PROJECT REPRESENTATIVES:

The project representatives during the term of this Agreement will be:

| State of California: | Contractor: |
|---|---|
| Department of General Services | Guardsmark, GP |
| Real Estate Services Division | 44 Montgomery Street, Suite 700 |
| Building & Property Management Branch | San Francisco, CA 94104 |
| 455 Golden Gate Avenue, Suite 2600 | Attention: Emily Fan |
| San Francisco, CA 94102 | Phone: (415) 956-5070 |
| Attention: James McCrea, Building Manager III | Fax:    (415) 956-8317 |
| Phone: (415) 703-4100 | |
| Fax:    (415) 703-4604 | |

**PROJECT MONITOR:** Mr. James McCrea, Building Manager, is assigned as the State Project Monitor for the contract. Mr. McCrea is not authorized by the State to make any commitments or make any changes which will affect the price, terms, or conditions of the Contract. The State reserves the right to designate a replacement for the State Project Monitor. The Contractor will be provided with written notice of any such change. Mr. McCrea's phone number is (415) 703-4100.

## EXHIBIT B

## BUDGET DETAIL AND PAYMENT PROVISIONS

1.  Invoicing and Payment:

    A.  For services satisfactorily rendered, and upon receipt and approval of the invoices, the State
        agrees to compensate the Contractor for actual expenditures incurred in accordance with the
        rates specified herein, which is attached hereto and made a part of this Agreement.

    B.  Payment shall be made in arrears, upon satisfactorily performance of work and upon receipt of an
        invoice received and approved by the designated representative(s).  The invoice must be
        submitted on contractor's letterhead signed by authorized representative, and include:

        •  Agreement number and Registration number
        •  Time period covered
        •  Work completed for the period shall be identified (detailed statement of services)

    Submit invoices to:

                        Department of General Services, RESD
                        Building & Property Management Branch
                        Attention: James McCrea, Building Manager
                        San Francisco Civic Center Building
                        455 Golden Gate Avenue, Suite 2600
                        San Francisco, CA 94102
                        Phone:  (415) 703-4100
                        FAX:    (415) 703-4604

2.  Budget Contingency Clause:

    A.  It is mutually agreed that if the Budget Act of the current year and/or any subsequent years
        covered under this Agreement does not appropriate sufficient funds for the program, this
        Agreement shall be of no further force and effect.  In this event, the State shall have no liability to
        pay any funds whatsoever to Contractor or to furnish any other considerations under this
        Agreement and Contractor shall not be obligated to perform any provisions of this Agreement.

    B.  If funding for any fiscal year is reduced or deleted by the Budget Act for purposes of this program,
        the State shall have the option to either cancel this Agreement with no liability occurring to the
        State, or offer an agreement amendment to Contractor to reflect the reduced amount.

3.  Prompt Payment Clause:

    Payment will be made in accordance with, and within the time specified in, Government Code Chapter
    4.5, commencing with Section 927.

4.  The rates in this Emergency Contract for the period of December 1, 2004, through March 31, 2005,
    do include California Mandated Benefits, and Contractor will not bill the State for other than the
    hourly rates.

JAN-25-07  16:14  From:C  M  S  W

Nov-09-04  14:44  fcc

5106223265                          42  P.30/49  Job-620

411  55 5461                          P.03

# Cost Breakdown Summary
## State of California Building

| Rates for Contract Extension Year 2004 |
| --- |

### Hourly Rates for Security Personnel:

| Title | Pay Rate | Billing Rate |
| --- | --- | --- |
| Security Officer | $12.50 | $25.77 |
| Security Officer II | $13.50 | $27.38 |
| Supervisor I | $14.50 | $28.98 |
| Supervisor II | $16.50 | $32.17 |
| Senior Supervisor | $18.50 | $35.38 |
| Overtime | | |

### Billing Summary:

| Title | Hours Per Week | Weekly Cost | Monthly Cost | Annual Cost |
| --- | --- | --- | --- | --- |
| Security Officer | 612 | $15,771.24 | $68,342.04 | $820,104.48 |
| Security Officer II | 135 | $3,696.30 | $16,017.30 | $192,207.60 |
| Supervisor I | 160 | $4,636.80 | $20,092.80 | $241,113.60 |
| Supervisor II | 120 | $3,860.40 | $16,728.40 | $200,740.80 |
| Senior Supervisor | 40 | $1,415.20 | $6,132.53 | $73,590.40 |
| Overtime | | $0.00 | $0.00 | $0.00 |

| Holiday | | | | $1,527,756.88 |
| --- | --- | --- | --- | --- |
| Total: | 1067 | $29,378.94 | $127,313.07 | ############ |

Inclusive of all Selection, Training, Uniforms, Licensing, Management Costs, and Benefits:

* Major Medical
* Pharmacy Card
* Life Insurance
* Tuition Reimbursement

* Paid Vacation
* Matching 401(k) Plan
* Wellness Program
* Performance Awards

Guardsmark CONFIDENTIAL

JAN-25-07  16:15  From:C. H. S.                    5106223265            T-442  P 31/49  Job-620

## ATTACHMENT II

### CCC-304

### CERTIFICATION

I, the official named below, CERTIFY UNDER PENALTY OF PERJURY that I am duly authorized to legally bind the prospective Contractor to the clause(s) listed below. This certification is made under the laws of the State of California.

| Contractor/Bidder Firm Name (Printed) GUARDSMARK, LLC. | Federal ID Number |
|---|---|
| By (Authorized Signature) Colin Buckbohm | |
| Printed Name and Title of Person Signing COLEY BUCKSFIELD, VP MANAGER NORTHERN CALIFORNIA | |
| Date Executed 2/17/05 | Executed in the County of SAN FRANCISCO |

## CONTRACTOR CERTIFICATION CLAUSES

1. **STATEMENT OF COMPLIANCE:** Contractor has, unless exempted, complied with the nondiscrimination program requirements. (GC 12990 (a-f) and CCR, Title 2, Section 8103) (Not applicable to public entities.)

2. **DRUG-FREE WORKPLACE REQUIREMENTS:** Contractor will comply with the requirements of the Drug-Free Workplace Act of 1990 and will provide a drug-free workplace by taking the following actions:

   a. Publish a statement notifying employees that unlawful manufacture, distribution, dispensation, possession or use of a controlled substance is prohibited and specifying actions to be taken against employees for violations.

   b. Establish a Drug-Free Awareness Program to inform employees about:

      1) the dangers of drug abuse in the workplace;
      2) the person's or organization's policy of maintaining a drug-free workplace;
      3) any available counseling, rehabilitation and employee assistance programs; and,
      4) penalties that may be imposed upon employees for drug abuse violations.

   c. Every employee who works on the proposed Agreement will:

      1) receive a copy of the company's drug-free workplace policy statement; and,
      2) agree to abide by the terms of the company's statement as a condition of employment on the Agreement.

   Failure to comply with these requirements may result in suspension of payments under the Agreement or termination of the Agreement or both and Contractor may be ineligible for award of any future State agreements if the department determines that any of the following has occurred: the Contractor has made false certification, or violated the certification by failing to carry out the requirements as noted above. (GC 8350 et seq.)

3. **NATIONAL LABOR RELATIONS BOARD CERTIFICATION:** Contractor certifies that no more than one (1) final un-appealable finding of contempt of court by a Federal court has been issued against Contractor within the immediately preceding two-year period because of Contractor's failure to comply with an order of a Federal court, which orders Contractor to comply with an order of the National Labor Relations Board (PCC 10296) (Not applicable to public entities).

4. **UNION ORGANIZING:** Contractor hereby certifies that no request for reimbursement, or payment under this Agreement, will seek reimbursement for costs incurred to assist, promote or deter union organizing.

5. **CONTRACTS FOR LEGAL SERVICES $50,000 OR MORE- PRO BONO REQUIREMENT:** Contractor hereby certifies that Contractor will comply with the requirements of Section 6072 of the Business and Professions Code, effective January 1, 2003:

   Contractor agrees to make a good faith effort to provide a minimum number of hours of pro bono legal services during each year of the Contract, equal to the lesser of 30 multiplied by the number of full-time attorneys in the firm's offices in the State, with the number of hours prorated on an actual day basis for any contract period of less than a full year or 10% of its contract with the State.

   Failure to make a good faith effort may be cause for non-renewal of a State contract for legal services, and may be taken into account when determining the award of future contracts with the State for legal services.

6. **EXPATRIATE CORPORATIONS:** Contractor hereby declares that it is not an expatriate corporation or subsidiary of an expatriate corporation within the meaning of Public Contract Code Section 10286 and 10286.1, and is eligible to contract with the State of California.

7. **SWEATFREE CODE OF CONDUCT:**

   a. All contractors contracting for the procurement or laundering of apparel, garments or corresponding accessories, or the procurement of equipment, materials, or supplies, other than procurement related to a public works contract, declare under penalty of perjury that no apparel, garments or corresponding accessories, equipment, materials, or supplies furnished to the State pursuant to the Contract, have been laundered or produced in whole or in part by sweatshop labor, forced labor, convict labor, indentured labor under penal sanction, abusive forms of child labor or exploitation of children in sweatshop labor, or with the benefit of sweatshop labor, forced labor, convict labor, indentured labor under penal sanction, abusive forms of child labor or exploitation of children in sweatshop labor. The Contractor further declares under penalty of perjury that they adhere to the Sweatfree Code of Conduct as set forth on the California Department of Industrial Relations website located at www.dir.ca.gov, and Public Contract Code Section 6108.

   b. The Contractor agrees to cooperate fully in providing reasonable access to the Contractor's records, documents, agents or employees, or premises if reasonably required by authorized officials of the contracting agency, the Department of Industrial Relations, or the Department of Justice to determine the Contractor's compliance with the requirements under paragraph (a).

8. **DOMESTIC PARTNERS:**

   Commencing on July 1, 2004, Contractor certifies that it is in compliance with Public Contract Code section 10295.3 with regard to benefits for domestic partners. For any contracts executed or amended, bid packages advertised or made available, or sealed bids received on or after July 1, 2004 and prior to January 1, 2007, a contractor may require an employee to pay the costs of providing additional benefits that are offered to comply with PCC 10295.3.

JAN-25-07  16:15  From:C. H. S.          5106223285          -442  P.33/49  Job-820

## ATTACHMENT III

## BID/BIDDER CERTIFICATION SHEET

This Bid/Bidder Certification Sheet must be signed and returned along with all the "required attachments" listed in Attachment I, "Required Attachment Checklist", as an entire package in duplicate with original signatures. The bid must be transmitted in a sealed envelope in accordance with IFB instructions.

A.   All required attachments are included with this certification sheet.

B.   I have read and understand the DVBE participation requirements and have included documentation demonstrating that I have met the participation goals or have made a good faith effort.

C.   The signature affixed hereon and dated certifies compliance with all the requirements of this bid document. The signature below authorizes the verification of this certification.

### An Unsigned Bid/Bidder Certification Sheet May Be Cause For Rejection

| 1. Company Name  GUARDSMARK, LLC | 2. Telephone Number (415) 956-6070 | 2a. Fax Number (415) 956-8317 |
|---|---|---|
| 3. Address  44 Montgomery St. Suite 700, San Francisco, CA 94104 | | |
| Indicate your organization type: 4. ☐ Sole Proprietorship | 5. ☐ Partnership | 6. ☒ Corporation - LLC |
| Indicate the applicable employee and/or corporation number: 7. Federal Employee ID No. (FEIN) 62-1943970 | 8. California Corporation No. 195-4886 (1) | |
| 9. Indicate applicable license and/or certification information:  C5151 PPO N790 | | |
| 10. Bidder's Name (Print)  COREY BAGGLESFIELD | 11. Title  VP, MANAGER NORTHERN CALIFORNIA | |
| 12. Signature | 13. Date  01/12/05 | |
| 14. Are you certified with the Department of General Services, Office of Small Business Certification and Resources (OSBCR) as:  a. California Small Business    Yes ☐  No ☒    If yes, enter certification number: | b. Disabled Veteran Business Enterprise  Yes ☐  No ☒  If yes, enter your service code below: | |
| NOTE: A copy of your Certification is required to be included if either of the above items is checked "Yes". Date application was submitted to OSBCR. If an application is pending: | | |

# DOING BUSINESS WITH THE STATE OF CALIFORNIA

The following laws apply to persons or entities doing business with the State of California.

1. <u>CONFLICT OF INTEREST</u>: Contractor needs to be aware of the following provisions regarding current or former State employees. If Contractor has any questions on the status of any person rendering services or involved with the Agreement, the awarding agency must be contacted immediately for clarification.

Current State Employees (PCC 10410):

1). No officer or employee shall engage in any employment, activity or enterprise from which the officer or employee receives compensation or has a financial interest and which is sponsored or funded by any State agency, unless the employment, activity or enterprise is required as a condition of regular State employment.

2). No officer or employee shall contract on his or her own behalf as an independent contractor with any State agency to provide goods or services.

Former State Employees (PCC 10411):

1). For the two-year period from the date he or she left state employment, no former State officer or employee may enter into a contract in which he or she engaged in any of the negotiations, transactions, planning, arrangements or any part of the decision-making process relevant to the contract while employed in any capacity by any State agency.

2). For the twelve-month period from the date he or she left State employment, no former State officer or employee may enter into a contract with any State agency if he or she was employed by that State agency in a policy-making position in the same general subject area as the proposed contract within the 12-month period prior to his or her leaving State service.

If Contractor violates any provisions of above paragraphs, such action by Contractor shall render this Agreement void. (PCC 10420)

Members of boards and commissions are exempt from this section if they do not receive payment other than payment of each meeting of the board or commission, payment for preparatory time and payment for per diem. (PCC 10430 (e))

2. <u>LABOR CODE/WORKERS' COMPENSATION</u>: Contractor needs to be aware of the provisions which require every employer to be insured against liability for Worker's Compensation or to undertake self-insurance in accordance with the provisions, and Contractor affirms to comply with such provisions before commencing the performance of the work of this Agreement (Labor Code Section 3700).

3. <u>AMERICANS WITH DISABILITIES ACT</u>: Contractor assures the State that it complies with the Americans with Disabilities Act (ADA) of 1990, which prohibits discrimination on the basis of disability, as well as all applicable regulations and guidelines issued pursuant to the ADA (42 U.S.C. 12101 et seq.).

4. <u>CONTRACTOR NAME CHANGE</u>: An amendment is required to change the Contractor's name as listed on this Agreement. Upon receipt of legal documentation of the name change the State will process the amendment. Payment of invoices presented with a new name cannot be paid prior to approval of said amendment.

5. <u>CORPORATE QUALIFICATIONS TO DO BUSINESS IN CALIFORNIA</u>:

a. When agreements are to be performed in the State by corporations, the contracting agencies will be verifying that the contractor is currently qualified to do business in California in order to ensure that all obligations due to the State are fulfilled.

b. "Doing business" is defined in R&TC Section 23101 as actively engaging in any transaction for the purpose of financial or pecuniary gain or profit. Although there are some statutory exceptions to taxation, rarely will a corporate contractor performing within the State not be subject to the franchise tax.

c. Both domestic and foreign corporations (those incorporated outside of California) must be in good standing in order to be qualified to do business in California. Agencies will determine whether a corporation is in good standing by calling the Office of the Secretary of State.

6. RESOLUTION: A county, city, district, or other local public body must provide the State with a copy of a resolution, order, motion, or ordinance of the local governing body which by law has authority to enter into an agreement, authorizing execution of the agreement.

7. AIR OR WATER POLLUTION VIOLATION: Under the State laws, the Contractor shall not be: (1) in violation of any order or resolution not subject to review promulgated by the State Air Resources Board or an air pollution control district; (2) subject to cease and desist order not subject to review issued pursuant to Section 13301 of the Water Code for violation of waste discharge requirements or discharge prohibitions; or (3) finally determined to be in violation of provisions of federal law relating to air or water pollution.

8. PAYEE DATA RECORD FORM STD. 204: This form must be completed by all contractors that are not another State agency or other government entity.

## EXHIBIT C

## GENERAL TERMS AND CONDITIONS
### GTC 304

**PLEASE NOTE:** The General Terms and Conditions will be included in the agreement by reference to Internet site: www.dgs.ca.gov/contracts.

## EXHIBIT D

## ADDITIONAL PROVISIONS

1. **EXCISE TAX:** The State of California is exempt from Federal Excise Taxes, and no payment will be made for any taxes levied on employees' wages. The State will pay for any applicable State of California or local sales or use taxes on the services rendered or equipment or parts supplied pursuant to this Agreement. California may pay any applicable sales or use tax imposed by another state.

2. **SETTLEMENT OF DISPUTES:** In the event of a dispute, Contractor shall file a "Notice of Dispute" with Department of General Services, director or designee within ten (10) days of discovery of the problem. Within ten (10) days the director or designee shall meet with the Contractor and Project Manager for purposes of resolving the dispute. The decision of the director or designee shall be final. In the event of a dispute, the language contained within this agreement shall prevail over any other language including that of the bid proposal.

3. **AGENCY LIABILITY:** The Contractor warrants by execution of this Agreement, that no person or selling agency has been employed or retained to solicit or secure this Agreement upon agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business. For breach or violation of this warranty, the State shall, in addition to other remedies provided by law, have the right to annul this Agreement without liability, paying only for the value of the work actually performed, or otherwise recover the full amount of such commission, percentage, brokerage, or contingent fee.

4. **POTENTIAL SUBCONTRACTORS:** Nothing contained in this Agreement or otherwise shall create any contractual relation between the State and any subcontractors, and no subcontract shall relieve the Contractor of its responsibilities and obligations hereunder. The Contractor agrees to be as fully responsible to the State for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by any of them as it is for the acts and omissions of persons directly employed by the Contractor. The Contractor's obligation to pay its subcontractors is an independent obligation from the State's obligation to make payments to the Contractor. As a result, the State shall have no obligation to pay or enforce the payment of any moneys to any subcontractor.

5. **TERMINATION FOR CAUSE:** Either party may terminate this Agreement upon written notice to the other party and be relieved of any further obligations should the Contractor other party fail to perform the requirements of this Agreement at the time and in the manner herein provided. In the event of such termination, the State may proceed with the work in any manner deemed proper by the State. Either party may terminate this Agreement and be relieved of any further obligations by giving at least 30 days prior written notice to the other party.

6. **INSURANCE:** Prior to commencement of the work, the contractor will provide evidence in the form of a certificate indicating that the below listed insurance is in effect. Said insurance must be maintained in force at the commencement of and for the duration of the contract.
   A. Worker's Compensation Insurance in compliance with California Labor Code.
   B. General liability insurance with limits of at least $1,000,000. Such insurance shall include the following provisions:
      1. The State of California, its officers, employees, and servants are included as additional insureds, but only insofar as operations under this Contract are concerned.
      2. Cancellation of this insurance will not be effective until 30 days following receipt or a written cancellation notice by the State of California.

7. **CONTRACT EXTENSION:** This Contract may be extended by mutual agreement, by way of a signed and approved Amendment to this Contract.