1   MARTIN D. BERN (SBN 153203)
    martin.bern@mto.com
2   MALCOLM A. HEINICKE (SBN 194174)
    malcolm.heinicke@mto.com
3   PAUL J. KATZ (SBN 243932)
    paul.katz@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street
5   Twenty-Seventh Floor
    San Francisco, CA  94105-2907
6   Telephone:     (415) 512-4000
    Facsimile:     (415) 512-4077
7
    Attorneys for Defendant
8   GUARDSMARK, LLC

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   JOEL ASSEKO, ALFREDO RITA, and        CASE NO.   C 07 4367 BZ
     ALEX SHPAK, individually and on behalf
14   of all others similarly situated,     **DEFENDANT GUARDSMARK, LLC'S
                                            MEMORANDUM OF POINTS AND
15                  Plaintiff,              AUTHORITIES IN OPPOSITION TO
                                            MOTION TO REMAND ACTION TO
16         vs.                             STATE COURT**

17   GUARDSMARK, LLC and DOES 1-25,        Date:        December 5, 2007
                                           Time:        10:00 a.m.
18                  Defendant.             Place:       Courtroom No. G
                                           Judge:       Bernard Zimmerman
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   BACKGROUND ........................................................................................................ 3

III.  ARGUMENT ............................................................................................................. 5

    A,    The LMRA Completely Preempts Plaintiffs' Remaining
        Common Law Claims ........................................................................................ 5

    B.    Plaintiffs Misapprehend the Scope of Section 301 Preemption ........................... 10

IV.   CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aguilera v. Pirelli Armstrong Tire Corp.,*
   223 F.3d 1010 (9th Cir. 2000).............................................................................*passim*

*Allis-Chalmers Corp. v. Lueck,*
   471 U.S. 202 (1985).......................................................................................... 6, 10

*Audette v. ILWU, Local 24,*
   195 F.3d 1107 (9th Cir. 1999).............................................................................*passim*

*Balcorta v. Twentieth Century-Fox Film Corp.,*
   208 F.3d 1102 (9th Cir. 2000)..................................................................................... 8

*Beals v. Kiewit Pac. Co.,*
   114 F.3d 892 (9th Cir. 1997).................................................................................. 8, 10

*Bowen v. U.S. Postal Serv.,*
   459 U.S. 212 (1983)..................................................................................................... 6

*Brockman v. Merabank,*
   40 F.3d 1013 (9th Cir. 1994)....................................................................................... 5

*Burnside v. Kiewit Pac. Corp.,*
   491 F.3d 1053 (9th Cir. 2007).............................................................................. 10, 11

*Caterpillar, Inc. v. Williams,*
   482 U.S. 386 (1987)........................................................................................... 6, 8, 12

*DeLapp v. Cont'l Can Co.,*
   868 F.2d 1073 (9th Cir. 1989)..................................................................................... 6

*In re Harmon,*
   250 F.3d 1240 (9th Cir. 2001)..................................................................................... 9

*J.I. Case Co. v. NLRB,*
   321 U.S. 332 (1944)................................................................................................. 6, 9

*Jones v. Pepsi Cola Bottling Co.,*
   822 F. Supp. 396 (E.D. Mich. 1993)........................................................................... 9

*Lappin v. Laidlaw Transit, Inc.,*
   179 F. Supp. 2d 1111 (N.D. Cal. 2001)................................................................ 7, 10

*Lingle v. Norge Div. of Magic Chef, Inc.,*
   486 U.S. 399 (1988)................................................................................................... 11

*Livadas v. Bradshaw,*
   512 U.S. 107 (1994)................................................................................................... 11

*Sparta Surgical Corp. v. Nat'l As''n of Sec. Dealers, Inc.,*
   159 F.3d 1209 (9th Cir. 1998)..................................................................................... 5

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.,*
   298 F.3d 1137 (9th Cir. 2002)..................................................................................... 9

*Teamsters v. Lucas Flour Co.,*
   369 U.S. 95 (1962)....................................................................................................... 6

1

### TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Valles v. Ivy Hill Corp.*,
  410 F.3d 1071 (9th Cir. 2005)........................................................................... 11, 12

4

*Young v. Anthony's Fish Grottos, Inc.*,
  830 F.2d 993 (9th Cir. 1987)............................................................................ *passim*

5

### FEDERAL STATUTES

6

28 U.S.C. § 1367 ................................................................................................. 5

7

29 U.S.C. § 185(a) ............................................................................................. *passim*

8

### STATE STATUTES

California Government Code § 19134 ................................................................ 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Guardsmark, LLC ("Guardsmark") respectfully opposes Plaintiffs' motion to remand on the grounds that even though Plaintiffs have dismissed some of their admittedly preempted claims in an apparent effort to escape this Court's jurisdiction, their amended complaint still contains other common law claims that are preempted and supplanted by the federal Labor Management Relations Act ("LMRA") and thus subject to federal jurisdiction.

Plaintiffs, who are members of the Service Employees International Union, Local 24/7 ("SEIU"), hold job positions with Guardsmark that are governed by a collective bargaining agreement ("CBA") between the SEIU and Guardsmark.  Rather than utilize the exclusive grievance and arbitration procedure contained in the CBA to address their wage and benefit claims, Plaintiffs and their counsel instead chose to circumvent their union representatives and file a complaint in state court.  Based on the fact that many of Plaintiffs' claims were clearly preempted and supplanted by the LMRA, Guardsmark removed the case to federal court where it planned to seek dismissal of these preempted claims due to Plaintiffs' failure to use the mandatory arbitration procedure set forth in their CBA.  Before Guardsmark could seek such dismissal, Plaintiffs, in an apparent effort to escape this Court's jurisdiction, essentially conceded that some of their claims were preempted and created a basis for federal jurisdiction here. Specifically, Plaintiffs filed an amended complaint that omits three of their previously pled common law claims, and then immediately filed the instant motion to remand this case back to state court.

The problem with the instant motion, however, is that Plaintiffs did not dismiss all of their remaining contract-based (as opposed to statutory) claims, and these remaining claims are also clearly preempted under Section 301 of the LMRA.  As such, these claims provide a basis for federal jurisdiction under the Labor Management Relations Act ("LMRA"), and Plaintiffs' motion to remand should be denied.

Under controlling Ninth Circuit law, if a plaintiff's job position is governed by a CBA, any contract-based claim arising from his employment is preempted under the LMRA. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("We have

GUARDSMARK, LLC'S OPP. TO MOTION TO
REMAND; CASE NO. C07 4367 BZ

previously held that where the position in dispute is 'covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted.'" (alteration in original) (citation omitted)); *Audette v. ILWU, Local 24*, 195 F.3d 1107, 1112 (9th Cir. 1999) (holding that when the "subject matter" of an agreement is a job position "covered by the CBA," any action for breach of that agreement is preempted by the LMRA). Three of the claims pled in Plaintiffs' Amended Complaint (their purported causes of action for breach of contract, breach of the covenant of good faith, and constructive fraud) are expressly based on alleged contractual duties of Guardsmark related to Plaintiffs' job positions, and as such are subject to LMRA preemption.

In their motion, Plaintiffs attempt to circumvent the broad preemptive reach of the LMRA by merging two essentially separate arguments. First, and most notably, Plaintiffs attempt to escape LMRA preemption by arguing that their claims assert nonnegotiable rights created by state statute, and are therefore not subject to preemption. The problem with this argument is that Plaintiffs have alleged both statutory and common law claims. And, while their argument may hold some water with respect to their state statutory causes of action, it is inapplicable to their three *contract*-based, common law claims, which are expressly predicated on the theory that Plaintiffs are third-party beneficiaries of agreements between Guardsmark and the Department of General Services. Because the job positions at issue are governed by a CBA, Plaintiffs cannot shield these contract-based (non-statutory) claims from the LMRA's wide preemptive scope, and these claims must have been pursued (if at all) through the grievance process.

Second, in another attempt to circumvent the broad reach of the LMRA and its preclusion of contract-based claims by unionized employees, Plaintiffs argue that their claims somehow fall outside the reach of *Aguilera* and related precedent simply because they do not seek to enforce independent employment agreements between the employees themselves and the union, but instead seek to enforce third-party contractual rights. This is mere semantics. The court in *Aguilera* stated that because a CBA governs the entire contractual relationship for employees who hold covered job positions, claims regarding these positions arising under *any* other agreements fall within the CBA's scope, and are therefore preempted. Moreover, the Ninth Circuit in *Audette* (a case upon which *Aguilera* relied) applied LMRA preemption to plaintiffs'

- 2 -

1  claims arising under a settlement agreement—a contract that certainly does not qualify as an

2  "independent employment agreement."  Plaintiffs' unduly narrow view of the holding in *Aguilera*

3  is inconsistent with the controlling caselaw.

4        For these reasons, the singular question before the Court here is whether Plaintiffs'

5  common law (as opposed to statutory) claims are preempted by the LMRA.  Because they clearly

6  are, Guardsmark respectfully submits that the Court should deny the instant motion, thereby

7  facilitating and expediting the dismissal of these claims.[1]

8  ## II.    BACKGROUND

9        Plaintiffs Joel Asseko, Alfredo Rita, and Alex Shpak (collectively, "Plaintiffs") are

10  security guards employed by Guardsmark at the State Building, San Francisco Civic Center

11  Complex, located at 455 Golden Gate Ave., San Francisco, California.  (First Amended

12  Complaint ("FAC") ¶¶ 6-8.)  Plaintiffs are currently and at relevant times have been members of

13  the SEIU, and they have held job positions covered by a CBA between Guardsmark and the

14  SEIU. (FAC, Ex. E at 38 ("1st CBA"); (Declaration of Paul J. Katz, Ex. A at 1-2 ("2nd CBA").)[2]

15  The CBA governs the terms and conditions of Plaintiffs' employment with Guardsmark,

16  including the wages and health care benefits to which Plaintiffs are entitled.  (1st CBA at 40, 44;

17  2nd CBA at 16-17.)  The CBA also contains a detailed grievance and arbitration procedure that is

18  the exclusive means of resolving disputes arising under the CBA.  (1st CBA at 21-23; 2nd CBA

19  at 20-23.)  Guardsmark provides security services at the State Building through a series of

20  agreements with the California Department of General Services ("DGS").  (FAC, Exs. 1-3.)

[1] Guardsmark's opposition to the instant motion is not an effort to extend this Court's jurisdiction beyond its proper scope.  As a practical matter, denial of the instant motion could, if the Court so chose, lead to a near-term remand as well.  Specifically, a ruling that the three common law claims remaining in the complaint are preempted, and thus a ruling that Court still has jurisdiction over the case as presently pled, would subject these three claims to immediate dismissal.  Once these claims were dismissed, Guardsmark (without waiving its right to argue preemption in state court) would agree to an order remanding to state court Plaintiff's two remaining statutory claims.

[2] The First Amended Complaint attached as Exhibit E to the "Agreement Between SEIU and Guardsmark, Inc., et al." that was effective from July 1, 2003 through June 30, 2007.  However, beginning September 1, 2004, Guardsmark, LLC and SEIU entered into a new CBA that supplanted the former CBA.  This latter CBA, attached as Exhibit A to the Declaration of Paul J. Katz, expired April 30, 2007.  Any difference between these two CBAs is immaterial for purposes of Plaintiffs' Motion to Remand.  Therefore, the two CBAs are referred collectively in this Opposition as "CBA."

GUARDSMARK, LLC'S OPP. TO MOTION TO REMAND; CASE NO. C07 4367 BZ

1    Rather than file a grievance against Guardsmark regarding the issues raised in this

2    action through the mandated grievance and arbitration procedure in the CBA, Plaintiffs instead

3    commenced this action against Guardsmark in the California Superior Court ("Complaint").[3]  In

4    the Complaint, Plaintiffs purport to represent a class of security guards employed by Guardsmark

5    who, during the four years prior to the filing, worked for Guardsmark, LLC (1) at an account

6    where Guardsmark provided security services pursuant to contract(s) with DGS; and/or (2) under

7    the terms and conditions of a CBA with SEIU.  (Complaint ¶ 37.)  Plaintiffs alleged that

8    Guardsmark failed sufficiently to compensate Plaintiffs and the putative class for benefits and/or

9    cash-in-lieu, holiday pay, and training pay.  (*Id.* ¶¶ 16-36.)  In addition to seeking recovery for

10   alleged violations of California statutory law (*id.* ¶¶ 46-53), Plaintiffs also asserted that

11   Guardsmark's conduct violates provisions of the DGS contracts and the CBA between

12   Guardsmark and SEIU (*id.* ¶¶ 54-84).  Specifically, Plaintiffs claimed to be third-party

13   beneficiaries of the DGS contracts (*id.* ¶ 57) and the CBA (*id.* ¶ 66), and as such sought to

14   recover damages for breaches of these agreements (*id.* ¶¶ 58, 63, 69, 73, 76-77) in addition to

15   damages pursuant to a related tort claim (*id.* ¶¶ 83-84).

16      On August 23, 2007, Guardsmark removed this action on the basis of federal

17   subject matter jurisdiction.  In particular, the removal petition contended that causes of action

18   three through eight in the Complaint were preempted and supplanted by Section 301 of the Labor

19   Management Relations Management Act ("LMRA"), thereby providing the basis for the Court's

20   subject matter jurisdiction.  (Removal Petition ¶ 7.)  Before Guardsmark could seek dismissal of

21   these claims on the grounds that they were preempted and thus subjected to the exclusive CBA

22   procedures, Plaintiffs filed a First Amended Complaint ("FAC") omitting some of the causes of

23   action that Guardsmark contended were preempted.  (Complaint ¶¶ 5, 31-34, 35-37, 39, 42, 65-

24   69, 71-73, 75.)  But, Plaintiffs did not remove all of these claims; specifically, they kept their

25   third, fourth and fifth claims for breach of contract, breach of the covenant of good faith, and

26

27   [3]  The Complaint initially listed defendants Guardsmark GP, LLC; Guardsmark, Inc.; and
     Guardsmark Holdings, Inc., but on August 20, 2007, these defendants were dismissed without
28   prejudice, pursuant to stipulation, in Superior Court.  (*See* Removal Petition, Ex. D.)

1   constructive fraud.  Plaintiffs then filed the instant motion to remand.  Instead of filing a separate

2   motion to dismiss these preempted claims, Guardsmark has elected simply to oppose this motion

3   for remand and seek a determination that these claims are preempted.

4   **III.    ARGUMENT**

5               Although a district court has discretion to retain, remand, or dismiss a case when

6   all the causes of action providing removal jurisdiction have been dismissed,[4] a district court must

7   retain jurisdiction when at least one of the remaining causes of action provides a basis for federal

8   question jurisdiction.  *See Brockman v. Merabank*, 40 F.3d 1013, 1017 (9th Cir. 1994) ("Like

9   diversity jurisdiction, original jurisdiction is not discretionary.  Thus, the district court could

10  neither dismiss the entire case for lack of jurisdiction nor remand it.").  Furthermore, for related

11  claims over which it does not have original jurisdiction, the court must exercise its supplemental

12  jurisdiction under 28 U.S.C. § 1367 unless enumerated exceptions apply.  *Id.* at 1017 n.2 ("We

13  note that if the district court's jurisdiction over [Plaintiff's] claims against [certain] defendants

14  had been 'pendent' rather than 'original,' the district court would have been required to exercise

15  jurisdiction over those claims unless one of the factors set forth in 28 U.S.C. § 1367(c) had been

16  satisfied.").  Therefore, if this Court has federal question jurisdiction over any of the claims

17  remaining in the First Amended Complaint, it must deny Plaintiffs' motion to remand.

18          **A.    The LMRA Completely Preempts Plaintiffs' Remaining Common Law
                    Claims**

19

20              Section 301 of the LMRA, 29 U.S.C. § 185(a), provides a basis for this Court's

21  federal-question jurisdiction where, as here, union members assert causes of action that are

22

23  [4] It is axiomatic that "jurisdiction must be analyzed on the basis of the pleadings filed at the time
    of removal without reference to subsequent amendments. . . . Because of this rule, a plaintiff may
24  not compel remand by amending a complaint to eliminate the federal question upon which
    removal was based."  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209,
25  1213 (9th Cir. 1998) (internal citations omitted).  Because the Complaint at the time of removal
    contained causes of action that provided this Court with original jurisdiction (a point Plaintiffs do
26  not dispute), Plaintiffs' subsequent dismissal of those claims does not *require* this Court to
    remand the action.  *See Sparta Surgical Corp.*, 159 F.3d at 1213.  As a result, this Court has the
27  power to retain jurisdiction over this case and deny the instant motion to remand regardless of the
    arguments presented in that motion.  Guardsmark would not object to the Court retaining
28  jurisdiction here.

GUARDSMARK, LLC'S OPP. TO MOTION TO
REMAND; CASE NO. C07 4367 BZ

1    governed by a CBA.[5]  The Supreme Court has long held that the preemptive force of Section 301

2    is so great that it converts state causes of actions that fall within its ambit into causes of action

3    that arise under federal law, and thus provides a federal court with subject matter jurisdiction,

4    *i.e.*, it preempts and supplants such claims.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393-94

5    (1987).  The preemptive scope of Section 301 extends beyond claims that explicitly allege a

6    breach of a CBA to those claims that depend on the contractual employment relationships

7    controlled by the CBA.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985) ("The[]

8    policies [animating LMRA preemption] require that 'the relationships created by [a collective-

9    bargaining] agreement' be defined by application of 'an evolving federal common law grounded

10    in national labor policy.'" (quoting *Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 224-25 (1983))).

11            "Collective bargaining between employer and the representatives of a unit,

12    usually a union, results in an accord as to terms which will govern hiring and work and pay in

13    that unit."  *J.I. Case Co. v. NLRB*, 321 U.S. 332, 334-35 (1944).  Section 301 of the LMRA

14    promotes CBAs by requiring courts to interpret CBAs pursuant to federal common law and by

15    preempting any state causes of action that may undermine such uniform interpretation.  *See Allis-*

16    *Chalmers Corp.*, 471 U.S. at 210 ("The possibility that individual contract terms might have

17    different meanings under state and federal law would inevitably exert a disruptive influence upon

18    both the negotiation and administration of collective agreements." (quoting *Teamsters v. Lucas*

19    *Flour Co.*, 369 U.S. 95, 103 (1962))).  Because a CBA controls the entire contractual

20    relationship of covered job positions, a covered employee asserting contractual rights under a

21    separate agreement could similarly disrupt the efficacy of the CBA.  *See DeLapp v. Cont'l Can*

22    *Co.*, 868 F.2d 1073, 1076 n.1 (9th Cir. 1989) ("[I]njecting private contracts into the bargaining

23    process, whether the contracts be to the advantage of a particular employee or not, will not

---

24    [5]  Section 301 of the LMRA, 29 U.S.C. § 185(a), provides:

25                Suits for violation of contracts between an employer and a labor
                 organization representing employees in an industry affecting
26                commerce as defined in this chapter, or between any such labor
                 organizations, may be brought in any district court of the United
27                States having jurisdiction of the parties, without respect to the
                 amount in controversy or without regard to the citizenship of the
28                parties.

GUARDSMARK, LLC'S OPP. TO MOTION TO
                                                REMAND; CASE NO. C07 4367 BZ

1  further Congress' goal of encouraging collective agreements and promoting industrial peace.").

2  Therefore, the governing scope of a CBA dictates that a covered employee's rights under a

3  separate agreement "could be effective only as part of the[CBA]." *See Young v. Anthony's Fish*

4  *Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). For these reasons, the Ninth Circuit has held

5  that when the "subject matter of [a] settlement agreement . . . is [job positions] covered by the

6  CBA" any claims seeking to enforce that separate agreement are completely preempted under the

7  LMRA. *Audette*, 195 F.3d at 1112; *see also Lappin v. Laidlaw Transit, Inc.*, 179 F. Supp. 2d

8  1111, 1123 (N.D. Cal. 2001) (Illston, J.) ("Since Lappin's contract claims concern a job that was

9  governed by the collective bargaining agreement, the claims are completely preempted by

10 Section 301." (citing *Young*, 830 F.2d at 997-99)).

11       In *Aguilera*, the Ninth Circuit held that union members' claims asserting rights

12 under agreements separate from the CBA were preempted. 223 F.3d at 1015. The plaintiffs in

13 *Aguilera* were initially hired through independent employment contracts as replacements for

14 striking workers. *Id.* at 1012. At the time of their hiring, their employer promised that they

15 would not be replaced by returning strike workers. *Id.* at 1013. When the strike ended, Plaintiffs

16 became members of the union subject to a CBA, but were terminated about six months later.[6] *Id.*

17 Plaintiffs alleged that their former employer had breached its promise not to replace them with

18 strike workers, and that this claim was not preempted because their employer's contractual duty

19 arose from their independent employment agreements before they were subject to a CBA. *Id.* at

20 1014. However, because plaintiffs "acknowledge[d] that they had expressly acceded to the

21 CBA, which governed their job terms and layoff guidelines," the court applied the rule that "any

22 claims seeking to enforce the terms of [an agreement] are preempted." *Id.* at 1015 (quoting

23 *Audette*, 195 F.3d at 1112) (alteration in original). Because a CBA controlled all terms of their

24 employment at the time of their layoff, the court found that the LMRA preempted plaintiffs'

25 claims.[7]

26 _____

[6]  Plaintiffs here incorrectly state that the plaintiffs in *Aguilera* "were terminated at the end of the
27 strike." (Motion to Remand at 10 ("Mot").)

[7]  In determining whether LMRA preemption applies to contract claims, the Ninth Circuit has
28 repeatedly drawn a bright-line between job positions covered by a CBA, and those not covered by

GUARDSMARK, LLC'S OPP. TO MOTION TO
REMAND; CASE NO. C07 4367 BZ

1    Plaintiffs' attempt to distinguish *Aguilera* from the situation here is unavailing.

2  According to Plaintiffs, *Aguilera*'s holding regarding the scope of LMRA preemption is limited

3  to "independent employment agreements" entered into by employees that are subject to a CBA.

4  (*See* Mot. at 10.) In other words, Plaintiffs here are suggesting that the LMRA preempts contract

5  claims by unionized employees only if those claims are based on contracts directly between the

6  employees and the employer. However, as *Aguilera* makes clear, the longstanding law in the

7  Ninth Circuit is that preemption applies to *all* contract claims brought regarding a job position

8  that is covered by a CBA; specifically, the Ninth Circuit summarized key facts and held as

9  follows:

10    Appellants concede that at the time of their September 1995 layoff,
    they were part of the bargaining unit whose positions were covered
11    by the 1995 CBA. They also acknowledge that they had expressly
    acceded to the CBA, which governed their job terms and layoff
12    guidelines. *We have previously held that where the position in
    dispute is "covered by the CBA, the CBA controls and any claims
13    seeking to enforce the terms of [an agreement] are preempted."*

14  223 F.3d at 1015 (citation omitted) (brackets in original) (emphasis added). Notably, the court in

15  *Aguilera* did not limit the term "an agreement" in any way that would exclude claims three, four,

16  and five here from its scope.

17    Furthermore, the Ninth Circuit precedent that *Aguilera* relied on in reaching its

18  holding—*Audette*—applied this same preemption analysis to a *settlement agreement*, which

19  clearly does not constitute an "independent employment agreement." *See Audette*, 195 F.3d at

20  1112. Because a primary policy reason for LMRA preemption is "promoting and preserving the

21  central role of arbitration in resolving disputes under a collective bargaining agreement,"

22  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 n.8 (9th Cir. 2000), it

23

24  a CBA. In *Caterpillar*, the Supreme Court held that employees' contract claims arising from job
    positions not covered by a CBA were not preempted even though the employees later held
25  different job positions that were covered by a CBA. 482 U.S. at 396-97. In contrast, *Caterpillar*
    does not apply to cases, as here, where an employee asserts a contract-based claim arising from
26  his employment covered by a CBA. *See Aguilera*, 223 F.3d at 1015-16 ("*Caterpillar* is
    inapplicable under the facts of this case because [*Caterpillar*] addressed an individual
27  employment contract negotiated for *a position not covered by the CBA*, at a time when the
    employee was not covered by a CBA." (emphasis added)); *Beals v. Kiewit Pac. Co.*, 114 F.3d
28  892, 894 (9th Cir. 1997) (same); *Young*, 830 F.2d at 997-98 (same).

- 8 -

1  would be a perverse rule indeed if claims brought by unionized employees under *direct*

2  employment agreements were preempted, but claims asserted under agreements *to which they*

3  *are not even parties* were not.  Thus, Plaintiffs fail in their attempt to circumvent *Aguilera* and

4  the other Ninth Circuit precedent on the broad scope of the LMRA, *i.e.*, they fail in their effort to

5  limit LMRA preemption to "independent employment agreements" only.

6         In addition, the fact that Plaintiffs are not parties to the DGS contracts, but rather

7  seek to enforce them as third-party beneficiaries, is irrelevant for preemption purposes.  *See*

8  *Jones v. Pepsi Cola Bottling Co.*, 822 F. Supp. 396, 403-04 (E.D. Mich. 1993) (plaintiffs' claims

9  seeking to enforce contract rights as third-party beneficiaries are preempted by LMRA).

10  Plaintiffs' claims arising under the DGS contracts undoubtedly would be preempted if Plaintiffs

11  had been signatories to the contracts.  Thus, their attempt to enforce the contracts as third-party

12  beneficiaries does not insulate their claims from preemption.  *Cf. Stratosphere Litig. L.L.C. v.*

13  *Grand Casinos, Inc.*, 298 F.3d 1137, 1146 (9th Cir. 2002) ("A third-party beneficiary who seeks

14  to enforce a contract does so subject to the defenses that would be valid as between the

15  contracting parties.").  Indeed, the classic example of a preempted claim under the LMRA—a

16  claim for breach of a CBA—is essentially brought by the plaintiffs as the third-party

17  beneficiaries of the CBA.  *See J.I. Case*, 321 U.S. at 336 (noting that "an employee becomes

18  entitled . . . as a third party beneficiary to all benefits of the collective trade agreement").

19         As in *Aguilera* and the precedent it relies on, the subject matter of the DGS

20  contracts at issue here is a set of job positions covered by a CBA, and therefore Plaintiffs' claims

21  depending on these contracts are preempted by Section 301 of the LMRA.  Plaintiffs explicitly

22  premise their third,[8] fourth,[9] and fifth[10] causes of action on Guardsmark's alleged duties to them

23  [8]  The third cause of action in the First Amended Complaint seeks to collect for Guardsmark's breach of the DGS contracts.  (FAC ¶ 47.)  Because Plaintiffs may assert contractual rights
24  arising from their employment only through the CBA, the third claim is preempted.  *See Young*, 830 F.2d at 997.

25  [9]  The fourth cause of action for breach of the implied covenant and good faith of the DGS
26  contracts is "preempted to the same extent the breach of contract claim is."  *See Audette*, 195 F.3d at 1112.

27  [10]  To succeed in their fifth cause of action for constructive fraud, Plaintiffs would have to prove that Guardsmark has breached its fiduciary duty arising from the DGS contracts, *see In re*
28  *Harmon*, 250 F.3d 1240, 1248 n.10 (9th Cir. 2001), and seek to do so in part by alleging

- 9 -

under the DGS contracts. (FAC ¶¶ 44-47, 49-50, 53-54.) Just as the plaintiffs in *Aguilera* admitted that the terms of their employment were governed by a CBA, it is undisputed here that the terms of Plaintiffs' job positions are governed by their union's CBA with Guardsmark. (1st CBA at 38; 2nd CBA at 1). Because the subject matter of the DGS contracts is Plaintiffs' covered positions, Plaintiffs may assert contractual rights under the DGS contracts "only as part of the [CBA]." *Young*, 830 F.2d at 997; *see also Lappin*, 179 F. Supp. 2d at 1123. As a result, the LMRA mandates that Plaintiffs' claims arising under the DGS contracts are preempted in order to assure that the CBA is interpreted uniformly under federal common law. *See id.*

**B.     Plaintiffs Misapprehend the Scope of Section 301 Preemption**

Plaintiffs raise three arguments in support of their remand motion. None of these contentions enable Plaintiffs' claims to escape LMRA preemption.

*First*, Plaintiffs' assert that all five of their "state law claims are independent of, and not directly created by, rights under any CBA." (Mot. at 5.) In so doing, Plaintiff mix two separate and distinct types of state law claims—those based on rights conferred directly by state *statutes*, and those based on rights conferred by *contract*. Under the Ninth Circuit's two-step LMRA preemption inquiry, Plaintiffs' three contract-based claims are preempted:

> [S]ection 301 preemption cases . . . require, first, an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there. . . . If, however, the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'

*Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (internal citations omitted).[11]

---

Guardsmark's failure to perform under these contracts (FAC ¶¶ 53-54). Torts claims that rely on a breach of a contractual duty are preempted to the same extent as the underlying breach of contract claim. *See Allis-Chalmers Corp.*, 471 U.S. at 211 ("Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract."); *Audette*, 195 F.3d at 1111-12 (preempting a claim for breach of fiduciary duty arising from plaintiffs' contractual employment relationship); *Beals*, 114 F.3d at 895 n.1 ("For the same reason that Beals' breach of contract claim is preempted, his tortious breach of contract claim is also preempted.").

[11]  Plaintiffs erroneously cite *Aguilera* for the proposition that "state law causes of action are not preempted by section 301 *unless* they 'are based on rights created by the [CBA].'" (Mot. at 5 (emphasis added).) The full quote from *Aguilera* states, "Section 301 of the LMRA preempts

GUARDSMARK, LLC'S OPP. TO MOTION TO REMAND; CASE NO. C07 4367 BZ

1   Plaintiffs' contract-based claims in the Amended Complaint do not survive the first inquiry of

2   this test because they do not allege rights "conferred upon an employee by virtue of state law."

3   Indeed, Plaintiffs themselves have labeled claims three and four as "breach of contract" and

4   "breach of implied covenant" respectively. (FAC ¶¶ 42, 47.) And, as explained above, because

5   Plaintiffs' job positions have been covered by a CBA, their contract-based claims related to that

6   job position must be based upon the CBA as a matter of Ninth Circuit law. *See Young*, 830 F.2d

7   at 997.

8          Plaintiffs also appear to argue that because the contractual rights at issue in the

9   DGS contracts refer to statutory rights, these contractual rights *themselves* are the same as

10  nonnegotiable state statutory rights. (*See* Mot. at 10.)[12]  This argument goes nowhere, however,

11  because "it is *the legal character* of a claim," and not whether another claim relying on the same

12  facts could go forward, that determines whether a claim is preempted under the LMRA. *See*

13  *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994); *see also Lingle v. Norge Div. of Magic Chef,*

14  *Inc.*, 486 U.S. 399, 408 (1988).

15         *Second*, Plaintiffs argue that their "state law claims are plainly based on state law

16  and are not substantially dependent on an interpretation of any CBA." (Mot. at 5.)  While this

17  may be true for Plaintiffs' first two causes of action based on alleged rights conferred by state

18  statute, it does not apply to Plaintiffs' contract-based claims.  Because these claims are not

19  "plainly based on state law" the court need not address whether they are "substantially dependent

20  on an interpretation of any CBA." *Id.; see Burnside*, 491 F.3d at 1059.

21         Plaintiffs' contract-based claims in this case are easily distinguishable from the

22  factual setting in *Valles v. Ivy Hill Corp.*, 410 F.3d 1071 (9th Cir. 2005), upon which Plaintiffs

23  rely.  In *Valles*, "[t]he employees based their claims *entirely* on the provisions of state law"

24  relating to nonnegotiable meal periods. *Id.* at 1074 (emphasis added).  The court then found

---

25  state law claims that are based directly on rights created by a collective bargaining agreement,

26  *and also* preempts claims that are substantially dependent on an interpretation of a collective
    bargaining agreement." 223 F.3d at 1014 (emphasis added).

27  [12] However, at other points in their remand motion, Plaintiffs appear to admit that the rights at
    issue in claims three, four, and five are contractual rights. (*See* Mot. at 6 (arguing Guardsmark "is

28  *contractually required* to provide benefits and/or cash-in-lieu benefits" (emphasis added)).)

GUARDSMARK, LLC'S OPP. TO MOTION TO
                                    REMAND; CASE NO. C07 4367 BZ

those claims not preempted by the LMRA. *Id.* at 1081. In contrast, Plaintiffs here admit that some of their claims are based on rights that arise out of negotiated contracts, and not from state law. (*See* Mot. at 6 ("Plaintiffs' claims . . . derive directly from statutory law *and the contractual relationship* between DGS and [Guardsmark]" (emphasis added)).) Thus, *Valles* is of no assistance to Plaintiffs here.

*Third*, Plaintiffs argue that "even if the Court finds that Plaintiffs' state law claims are directly based on, or require an interpretation of, any CBA, Plaintiffs' claims are not preempted because Section 301 does not permit parties to waive nonnegotiable state rights." (Mot. at 5.) Claims three, four, and five, however, do not assert any state law rights. Assuming that California Government Code Section 19134 embodies nonnegotiable state rights, Plaintiff is already asserting those rights through causes of action premised directly on state law (*i.e.* claims one and two in the First Amended Complaint). "As masters of the complaint," *Caterpillar*, 482 U.S. at 395, Plaintiffs have chosen to allege rights beyond those afforded to them by state law and have asserted preempted claims in doing so.

## IV.    CONCLUSION

For the reasons set forth above, Guardsmark respectfully submits that Plaintiffs' motion to remand should be denied.

DATED: October 22, 2007

MUNGER, TOLLES & OLSON LLP
MARTIN D. BERN
MALCOLM A. HEINICKE
PAUL J. KATZ


By: _____
        MARTIN D. BERN

Attorneys for Defendant
GUARDSMARK, LLC