UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEL ASSEKO, ALFREDO RITA, )
and ALEX SHPAK, individually)
and on behalf of all other  )   No. C07-4367 BZ
similarly situated,         )
                            )   **ORDER GRANTING PLAINTIFFS'**
            Plaintiff(s),   )   **MOTION TO REMAND**
                            )
    v.                      )
                            )
GUARDSMARK LLC, et al.,     )
                            )
            Defendant(s).   )
_____)

Plaintiffs have moved to remand this action to state court pursuant to 28 U.S.C. Section 1447(c).[1]  For the reasons articulated below, plaintiffs' motion is **GRANTED.**

On May 31, 2007, plaintiffs filed suit in state court, on their own behalf as well as on behalf of those similarly situated, against their employer defendant Guardsmark, a private security company.  Plaintiffs are security guards and members of the Service Employees International Union

---

[1] All parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) for all proceedings, including entry of final judgment, other than plaintiffs' request for remand.

1

("Union").  Plaintiffs' employment is governed by a collective bargaining agreement between defendant and the Union ("CBA")[2]. Defendant also contracted with the California Department of General Services ("Department") to provide security at the State Building in the San Francisco Civic Center Complex.

In state court, plaintiffs sued defendant for allegedly failing to pay wages and benefits as required by California Government Code section 19134 ("section 19134").  Section 19134 provides that "[p]ersonal services contracts entered into by a state agency . . . for persons providing ... security guard services shall include provisions for employee wages and benefits that are valued at least 85 percent of the state employer cost of wages and benefits provided to state employees for performing similar duties."

Defendant removed the matter to federal court contending that plaintiffs' third through eighth causes of action were preempted by Section 301 of the federal Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Defendant argued that to the extent plaintiffs' first and second causes of action for failure to pay wages and for unfair business practices under California's Business & Professions and Labor Codes were not preempted by the LMRA, this Court had supplemental jurisdiction over those claims.

On September 27, 2007, by stipulation, plaintiffs filed a

---

[2] Plaintiffs attached the CBA effective July 1, 2003 through June 30, 2007 as an exhibit to their moving papers.  It does not appear that defendant was a party to that CBA. Defendant was a party to a latter CBA effective September 1, 2004 through April 30, 2007.  As such, I will only consider the September 1, 2004 CBA to which defendant was a party.

2

first amended complaint ("amended complaint") dismissing all claims they contend were preempted by the LMRA.  The amended complaint only contains claims for relief involving defendant's alleged failure to provide wages and benefits as required by section 19134.[3]  Plaintiffs then moved to remand the matter to state court.  Defendant argues that several of plaintiffs' claims are still preempted under section 301 of the LMRA.[4]

A federal court may remand an action to state court for lack of subject matter jurisdiction any time before entry of final judgment.  28 U.S.C. § 1447(c).  Subject matter jurisdiction is generally determined by viewing the complaint at the time of removal.  See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1211 (9th Cir. 1998.)  When a plaintiff makes a tactical decision to dismiss claims after removal to avoid federal jurisdiction, the court has discretion to remand if subject matter jurisdiction is lacking.  See Baddie v. Berkeley Farms, Inc., 64 F.3d 487, 490

---

[3]  In the amended complaint, plaintiffs allege that the failure to pay benefits required by Section 19134 not only violates that law but also violates provisions of the contract between defendant and the Department which requires defendant to pay plaintiffs in accordance with state laws and constitutes an unfair business practice under state law.  Plaintiffs' amended complaint does not mention the CBA, let alone allege that it is violated.  Plaintiffs dropped their claims involving failure to pay and underpayment of holiday pay as well as failure to pay for mandated training.

[4]  Specifically, defendant contends that plaintiffs claims titled breach of contract, breach of the implied covenant of good faith and fair dealing, and constructive fraud involving defendant's alleged breach of its contract with the Department for payment of wages and benefits (or cash-in-lieu of benefits) pursuant to section 19134 are still preempted.

(9th Cir. 1995); see also Schuster v. Gardner, 319 F.Supp.2d 1159, 1164 - 65 Court. (S.D.Cal. 2003)

Section 301 of the LMRA preempts state law claims that are directly based on rights provided under a collective bargaining agreement or dependent on interpreting a collective bargaining agreement. Caterpillar, Inc. V. Williams, 482 U.S. 286, 394 (1987). "When the meaning of particular contract terms is not disputed, however, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption." Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1014 (9th Cir. 2000).

The Ninth Circuit has set forth a two part test to determine if section 301 of the LMRA preempts state law claims. Initially, it must be determined "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). If "the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective- bargaining agreement.'" Id.; *quoting* Caterpillar, 482 U.S. at 394.

Here, plaintiff's right to receive wages and benefits (or cash-in-lieu of benefits) pursuant to section 19134 is set forth in both the statute and the contract between defendant and the Department. The collective bargaining agreement does not refer to section 19134 and plaintiffs do not allege a violation of that agreement. The collective bargaining agreement sets forth wages the Union bargained for on behalf

4

of its workers.  With respect to health benefits, the collective bargaining agreement calls for continued benefits pursuant to the previous collective bargaining agreement[5] "and in accounts where such coverage is agreed upon between [defendant] and [the Department]."

"[W]hen the meaning of contract terms is not subject to dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).  Whether analysis of the collective bargaining agreement is necessary requires a determination as to whether the claim can be resolved by "looking to" versus "interpreting" the contract. Burnside, 491 F.3d at 1060.  In the context of section 301 preemption, "the term 'interpret' is defined narrowly" and means more than considering, referring to or applying the collective bargaining agreement terms.  Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000). The Ninth Circuit acknowledges that while the "'line between reference to and interpretation of an agreement may be somewhat hazy,' (citation omitted), the totality of the policies underlying § 301- promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards- guides our understanding of what

---

[5] The collective bargaining agreement effective September 1, 2004 through April 30, 2007 is the only collective bargaining agreement before me.

constitutes 'interpretation.'" Id. at 1108 - 1109; *citing* Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993).

Plaintiffs' claims are not dependent on an analysis or interpretation of the collective bargaining agreement. Although plaintiffs' wages and benefits are referred to in the collective bargaining agreement, there is no evidence that plaintiffs negotiated away or expressly waived their state law rights under section 19134, as defendant admitted at the hearing. Nor does section 301 of the LMRA "grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985).

Defendant repeatedly points to the Ninth Circuit's holding in Aquilera to support its contention that because the contract with the Department involves job positions covered by the CBA, the claims are preempted. In Aquilera, to the extent plaintiffs claimed defendant had violated state law, that claim was time barred. The only remaining claim - that defendant had violated promises that plaintiffs would be permanently employed - was found preempted by a CBA signed after plaintiffs were hired, to which they "expressly acceded" (Aquilera, 223 F.3d at 1015), and whose seniority provisions governed the manner in which plaintiffs were laid off. Plaintiffs' claims for relief are more akin to those of the plaintiffs in Burnside because their claims are based on rights for wages and benefits provided by state law, and resolving the claims does not require interpretation or

6

analysis of the collective bargaining agreement.  See 491 F.3d at 1053.

Defendant mistakenly relies on the Ninth Circuit's statement that "where the position in dispute is 'covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted.'" Aquilera, 223 F.3d at 1015, *brackets in original; citing* Audette v. ILWU Local 24, 195 F.3d 1107, 1112 (9th Cir. 1999).  However, these plaintiffs seek to enforce an agreement between defendant and the Department which incorporates defendant's obligations under Section 19134.  In Aquilera and Audette, plaintiffs were attempting to enforce employment agreements between themselves and their employer (Aquilera) or between themselves, their employer and their union (Audette) in situations in which the courts had to interpret the CBA to decide the claims.[6]  Here all of plaintiffs' claims, however denominated, are based on an alleged violation of Section 19134.  They are not based on the CBA and do not require interpretation of the CBA.

Even though plaintiffs' remaining claims for relief are not preempted, I have discretion to retain supplemental jurisdiction.  28 U.S.C.S. § 1367(c)(3).  Since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law,"

---

[6] During oral argument, the parties acknowledged that the question of whether a suit brought by employees as third party beneficiaries to enforce a contract between their employer and a third party is preempted is a matter of first impression.

7

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), I decline to exercise supplemental jurisdiction here.

Accordingly, plaintiffs' motion to remand is **GRANTED** and the clerk is ordered to **TRANSFER** the case to the Superior Court of the City and County of San Francisco for further proceedings.

Dated: December 6, 2007

_____
Bernard Zimmerman
United States Magistrate Judge